# CHARLESTON.

STATE *v.* CHASE BROWN

(No. 5859)

STATE *v.* CLARK BROWN

(No. 5871)

Submitted May 10, 1927.     Decided June 7, 1927.

1.  WITNESSES—*Witness' Credibility May be Attacked by Show-ing His Statement Out of Court Inconsistent with Testi-mony in Chief as to Material Fact; Ordinarily, Expressions of Opinion Inconsistent with Testimony in Chief as to Ma-terial Fact May Not be Shown to Attack Witness' Credi-bility; Inconsistency of Statement Out of Court to Impeach Testimony in Chief Must Appear Clearly on Direct Com-parison with Evidence, and Cannot be Based on Inference.*

    The credibility of a witness may be attacked by showing that he made a statement out of court which is inconsistent with his testimony in chief in court as to some material fact. This rule ordinarily applies only to statements of fact and does not extend to expressions of opinion. The inconsistency of the impeaching statement must appear clearly upon a direct comparison with the evidence of the witness, and cannot be based upon a mere inference. (p. 95.)

    (Witnesses, 40 Cyc. pp. 2687, 2701, 2712.)

2.  EXPERT AND OPINION EVIDENCE—*Court May Permit Experi-ment by Expert in Jury's Presence, if Jury Will be En-lightened Thereby; in Prosecution for Murder, Permitting Chemist to Conduct Experiment Before Jury to Determine Whether Spots Were Blood Stains Held Not Abuse of Court's Discretion.*

    It is within the discretion of a trial court to permit an expert to conduct an experiment in the presence of the jury when it is apparent to the court that the jury will be en-lightened thereby. (p. 97.)

    (Criminal Law, 16 C. J. §§ 1094, 1221 [Anno].)

3.  CRIMINAL LAW—*State's Counsel Ordinarily Should Not Char-acterize Accused as "Criminal."*

    Counsel for the State ordinarily should not characterize an accused as "a criminal". (p. 98.)

    (Criminal Law, 16 C. J. § 2255.)

    (NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Error to Circuit Court, Greenbrier County.

Chase Brown and Clark Brown were convicted in separate trials of first degree murder, and they bring error. Cases considered together on appeal.

*Reversed.* .

*J. Scott McWhorter* and *C. L. Lilly,* for Chase Brown.

*J. Scott McWhorter,* for Clark Brown.

*Howard B. Lee,* Attorney General, and *J. L. Wolfe,* Assistant Attorney General, for the State.

LITZ, JUDGE:

Chase Brown and Clark Brown are brothers. They were indicted jointly in the circuit court of Greenbrier county for the murder of J. A. Fulcher. Electing to be tried separately, each was found guilty of murder in the first degree, with recommendation that he be confined in the penitentiary for life. The evidence is so nearly alike in both cases that they will be treated together.

Fulcher was about sixty-five years old at the time of his death. Several years prior thereto he had married Nora Brown, who is the mother of Chase and Clark. Fulcher suffered from an organic heart trouble which physicians stated was likely to cause his death at any time. His body was found near a fence at the edge of a woods on top of a mountain. · There were marks of violence on his face, but the wounds did not of themselves indicate what had produced them. A bruise about three inches square was found on top of the head, but the skull itself was not injured. From an examination made shortly after the body was discovered the physicians were of opinion that his neck was not broken, but upon another examination made more than a month after his death one physician testified that he found the spinal cord ruptured in Fulcher's neck, and that in his opinion the rupture produced death.

The evidence indicates that both Chase and Clark disliked Fulcher. At the trial of Clark one witness testified that Clark had stated he intended to kill Fulcher if he got a chance. The chief witness for the State in both cases was H. L. Hill, a detective employed by the county court of

Greenbrier county to discover evidence for the prosecution. Hill testified that Clark and Chase confided to him that they killed Fulcher. His evidence in that respect is as follows:

"They told me Mr. Fulcher came to Chase Brown's home on this Saturday and got there about twelve-thirty and that they were getting ready to eat dinner and he walked in the house and I think asked—some of them were sitting at the table, and he asked if they were going to allow him to eat or something of the kind, and Mrs. Chase Brown told him no, he was not going to eat anything there and they got in a squabble and Chase told him to wait until he eat his dinner he would end it for all. And after they eat Chase and Mr. Fulcher got in a scrap and Chase hit him, and Chase hit him with a fork, hit him with a fork and tore his ear; Clark and Chase carried him outside and with the use of a bottle, dish and board they killed him, brought him back in and he was placed under the bed. They laid his head on a bark sack, I think they called it, under the bed and laid this sack under his head until after dark and after dark his body was hid. * * * Sunday and Monday passed and there was nothing said in regard to Mr. Fulcher's disappearance, and Tuesday, Jim Hayes and Clark carried the body from where it was hid up to the place where the body was found later Tuesday."

Both of the accused denied making the alleged statement to Hill.

Numerous errors are assigned. The most serious charge relates to the admission of certain statements by third parties, which were neither part of the *res gestae* nor made in the presence of the accused. Such statements are not admissible as primary evidence. Underhill's Crim. Ev., 3d ed., sec. 168; 16 R. C. L. p. 959, secs. 133, 134; 22 C. J. p. 199, sec. 167. However, the credibility of a witness may be attacked by proving statements which contradict or are inconsistent with his testimony on direct examination. Underhill, *supra,* sec. 380; 40 Cyc. p. 2687, sec. 10-D; 28 R. C. L. p. 634, sec. 219; Thompson on Trials, Vol. 1, sec. 492. The state-

ments objected to, which were limited by the trial court to purposes of impeachment, follow:

(1) The witness Hill was allowed to testify that Clint Brown, a brother of the accused, had told him "the State had the right parties but would not be able to prove the case". This statement does not contradict any evidence given by Clint on his examination in chief. It is not claimed by the State that Clint had any actual knowledge of the alleged murder. Therefore the statement attributed to him, though inconsistent with his testimony, would be merely the expression of an opinion or hearsay. "Contradictory statements of a witness to be admissible for the purpose of impeachment must be * * * a statement of facts and not a mere opinion of the witness. Thompson, *supra,* sec. 493; 28 R. C. L. p. 634, sec. 220.

(2) J. O. Davis and Snowden Crane were permitted to testify that Clint had stated to them a short time before the death of Fulcher that if Fulcher went up on the mountain "he would get his killing". Another expression of opinion, and one which does not contradict any of Clint's testimony in chief. .

(3) The witness Hill was allowed to detail an alleged statement to him by Mrs. Fulcher, a part of which was, "Then Clark and Chase took the old man out into the back part of the house and there killed him". There is no evidence that Mrs. Fulcher followed Clark and Chase "out into the back part of the house" and witnessed the alleged murder. If she was not an eye-witness thereto, then we have here merely the expression of another opinion. Say that the above statement warrants the inference that she saw what is alleged to have taken place in the back part of the house,—the inconsistency of an impeaching statement is not permitted to depend on a mere inference. *People* v. *Cullum,* 122 Cal. 186, 188; 28 R. C. L. p. 635, sec. 220.

(4) The same criticisms apply to the evidence of Jerry Cook who testified that Mrs. Fulcher said to him, with reference to the death of Fulcher, "The bunch on the hill had killed him". A further objection to Cook's testimony is that

the State did not show that the accused constituted the "bunch on the hill".

(5)  M. B. McClung and Burk Cook were permitted to testify that Mrs. Chase Brown had told them a short while prior to the death of Fulcher that "a day or two ago Clint, Chase and Clark Brown had a big fuss with J. A. Fulcher and Mrs. J. A. Fulcher". The alleged statement did not in any way contradict the testimony-in-chief of Mrs. Brown.

We therefore find that in each of the above instances it was error to admit the alleged statements of the several third parties.

The State now contends that as this class of evidence was not specifically pointed out on the motion to set aside the verdict, or made the subject of a special bill of exceptions, it cannot be considered by this Court, citing *State* v. *Noble,* 96 W. Va. 432, and other cases. The purpose of the rule, as stated in *Coal Company* v. *E. & M. Works,* 94 W. Va. 300, 309, "is to prevent successful reliance upon a multitude of objections interposed throughout a long trial and never specifically or sharply brought to the attention of the trial judge but reserved unnoticed as a possible ground of technical error to be relied upon by the unsuccessful litigant after a full trial on the merits". The reasons for the rule do not apply here. The objections to the admission of the above statements were sharp and specific. Their admission is not a mere technical error, but is highly prejudicial to the accused. One of the reasons assigned in the motion to set aside the verdict in each of the present cases is "the admission of improper evidence over the objections of the prisoner". As the admitted statements were so numerous and the objections thereto were so persistent and unyielding during the two trials, it would violate all sense of propriety to now classify such objections as "reserved unnoticed". We are forced to conclude that the trial court well understood that such statements constituted a material part of the *improper evidence* referred to in the motion to set aside the verdict. Therefore the spirit of the rule in *State* v. *Noble* is not violated when we now refuse to treat the objections to such evidence as waived.

A chemist called by the State was permitted to perform an experiment before the jury for the purpose of determining whether certain discolorations were blood spots. An experiment may be conducted by an expert in the presence of the jury when it is apparent to the court that it will enlighten the jury. Underhill, *supra*, sec. 368. We cannot say that the court abused its discretion in this matter.

The stomach of Fulcher was exhibited to the jury by the State. This may not have been prejudicial error; but we see no evidential connection in this case between the stomach and the broken neck.

We find no error in the instructions, given and refused.

In the Clark Brown case one of counsel for the State referred to Clark as a "criminal". Upon the authority of *O'Donnell* v. *The People*, 110 Ill. App. 250, quoted in our recent case of *State* v. *Hively*, counsel for the State had no right to thus characterize the accused.

As a new trial must be granted because of the errors above referred to, other alleged errors such as surprise, etc., are obviated thereby, and comment thereon is unnecessary.

In each case, the judgment of the lower court is reversed, the verdict of the jury set aside, and a new trial awarded.

*Reversed.*