■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOE H. JONES, Appellant.—Appeal by defendant from a judgment of the Supreme Court, Kings County, rendered November 16, 1978, convicting him of murder in the second degree, attempted murder in the second degree (two counts), and criminal possession of a weapon in the second degree, upon a jury verdict, and imposing sentence. Judgment reversed, on the law and as a matter of discretion in the interest of justice, and new trial ordered. The evidence adduced at the trial disclosed that on November 16, 1976, between approximately 10:30 P.M. and 11:30 P.M., an altercation took place between the defendant and his girl friend, Evelyn Vaughn, with whom he was living in an apartment at 1057 Eastern Parkway, Brooklyn, New York. The apartment was also occupied by Evelyn's mother, her sister, Cynthia Vaughn, a friend, Brenda Swinton, and several other persons. The argument was heated and the defendant and Evelyn were yelling and pushing and hitting each other in the hallway. Cynthia also became involved and, at one point, picked up an orange juice bottle. The melee continued for about 20 minutes and culminated in the shooting which forms the basis of the instant indictment. The defendant was charged with having fired two shots at

Evelyn, which ultimately caused her death, and two shots at both Cynthia and Brenda which resulted in such serious injury to them as to require hospital care. In the course of the trial two different versions were given as to what occurred just before and leading to the shooting. Cynthia Vaughn testified for the prosecution that as the participants in the quarrel moved down the hallway to the door of Evelyn's bedroom, the defendant entered the bedroom, pulled a revolver from a box, pointed it at Evelyn and discharged it at her. As Cynthia ran down the hall the defendant followed and fired two shots at her, striking her in the lower back, and then fired two more shots striking Brenda Swinton in her arm and thigh. The defendant, on the other hand, testified that he had resided with Evelyn Vaughn for some time and that on the day of the shooting he had been drinking and that he and Evelyn were talking about moving out of the apartment into one of their own when Cynthia entered the room. The defendant testified that Cynthia and Evelyn had a close relationship, and that Cynthia felt that he was "coming between the relationship," and she blamed him for the impending separation. About an hour later the defendant heard Evelyn and Cynthia arguing in the kitchen about the contemplated move and when he heard his name mentioned he became involved in the argument. When they all moved into the hallway Cynthia became upset and pushed him. The defendant pushed back. He went into Evelyn's bedroom and Cynthia followed and continued to harass him. After a while he decided to take some record albums and leave the apartment. Cynthia insisted on seeing the albums, but defendant resisted. He finally did permit her to see the albums. Another argument began and defendant and Cynthia began pushing each other. Evelyn told defendant not to push her sister and grabbed him. He shoved Evelyn causing her to hit her back on a mirror. Her back began to bleed. Defendant tried to leave but was stopped by Cynthia. When defendant went to push her away, she picked up a bottle and attempted to strike him with it. He took it away from her and pushed her. Evelyn then ran into the bedroom and picked up a gun from a box behind the door. Defendant stated, "I had taken the gun away from her, and before I know'd [sic] it, the gun had went off. I just pulled the trigger on it unintentionally". He stated that he did not intend to kill Evelyn, Cynthia or Brenda; it was "just reflex, the gun went off". He admitted that he was so angry, that it was possible he would have shot anyone that day. In light of the evidence, the trial court instructed the jury on the charges of murder in the second degree, attempted murder in the second degree, assault in the first degree, and criminal possession of a weapon in the second degree, and defined the element of intent as an essential element of such offenses. The court also charged the lesser crimes of manslaughter in the first degree where death ensues when the intent was to cause serious physical injury rather than death, and manslaughter in the second degree, where death results from reckless conduct. During the course of the trial inculpatory statements given to Detective Reuben Bankhead and Assistant District Attorney David Covey were received in evidence. At a pretrial *Huntley* hearing it was established that, at about 11:30 P.M. on April 20, 1977, after the defendant had been given his constitutional warnings and he had knowingly waived the same, Detective Bankhead asked him what he had done with the gun after the shooting. He replied that he had put it into an ash can on Eastern Parkway. When, after having made this response, he requested a lawyer, the interrogation by the detective terminated. It was also established that, thereafter, while still in the station house, defendant was further interrogated, this time by Assistant District Attorney Covey. After giving the

defendant his constitutional warnings, Covey also obtained an inculpating statement from the defendant. The interrogation finally terminated when the defendant refused to answer further questions. Upon termination of this interrogation, the Assistant District Attorney learned of the defendant's previous request for a lawyer when he was interrogated by Detective Bankhead. At the conclusion of the hearing, Criminal Term held that "Both the statement to Bankhead and to Covey are admissible, the one to Covey only to the extent where the defendant refused to answer any more questions". The law is settled that all questioning must cease when a defendant requests counsel (*Miranda v Arizona,* 384 US 436; *People v Cunningham,* 49 NY2d 203; *People v Rodney P.,* 21 NY2d 1). We hold that it was error for the court not to have suppressed the defendant's statement to the Assistant District Attorney. The Assistant District Attorney is presumed to have known that the defendant had requested a lawyer when he was interrogated by Detective Bankhead (see *Giglio v United States,* 405 US 150). Commendably, the People in their brief, concede that because the defendant's request to Detective Bankhead for an attorney was not honored, his subsequent statement to Assistant District Attorney Covey should have been suppressed. Another issue raised by defendant pertains to the court's instructions to the jury with respect to the element of intent. The court charged: "that a person acts intentionally with respect to a result or conduct * * * when his conscious objective is to cause such a result or to engage in such conduct. You have to determine what a person's intent was, as I said, by all of the circumstances in the case. *A person is presumed to intend the natural, foreseeable consequences of his act."* (Emphasis supplied.) The use of the last sentence in this instruction that "A person is presumed to intend the natural, foreseeable consequences of his act" permitted the jury to presume intent from the act itself and, thereby, unconstitutionally shifted the burden of proof upon the defendant (see *Sandstrom v Montana,* 442 US 510). Such instruction impaired the fact-finding process by foreclosing any consideration of the lesser offenses of manslaughter in the first degree involving intent to cause serious physical injury rather than death, and manslaughter in the second degree which is based on reckless conduct. It would necessarily follow, if the jury relied on the presumption that the resulting death was intended as "the natural, foreseeable consequences of" the defendant's act, that there would be no consideration as to whether, in actuality, the defendant possessed the intent to cause only serious physical injury or was guilty of reckless conduct (see *People v O'Neill,* 59 AD2d 540, 543). It is a fundamental rule of law that jury instructions are required to be responsive to the issues presented by the evidence. In the instant matter there was evidence which raised the issue of manslaughter, and, although the court properly gave the jury the option of returning a verdict on the lesser included offense of manslaughter it did not provide the jury with a clear and correct instruction of the law to be applied as it pertains to the requisite intent. Essentially, the erroneous portion of the charge involving the presumption so undermined the jury's fact-finding function as to deprive the defendant of his right to a fair trial in the course of which the burden would be upon the People to prove his guilt beyond a reasonable doubt. Proof of guilt, particularly with regard to intent, under the circumstances of this case, cannot be said to be so overwhelming as to render the error harmless. Furthermore, in the course of the trial the prosecutor employed a cross-examination technique in which he asked the defendant whether certain prosecution witnesses were "lying". Such attempt to compel a defendant to characterize those witnesses as liars has

been disapproved repeatedly *(People v Mariable,* 58 AD2d 877; *People v Crossman,* 69 AD2d 887). We agree with the defendant's further contention that the summation of the prosecutor wherein, in referring to the defendant's counsel, he stated that he "inadvertently has conceded that the defendant's testimony is somewhat less than accurate" was prejudicial to defendant. It was error for the prosecutor to suggest that the defendant's attorney had a negative view of the defendant's testimony. Such remark was calculated to undermine the defense by suggesting that the defendant's counsel had no confidence in the integrity of his client's case. This is highly prejudicial *(People v Fluker,* 51 AD2d 1045; *People v Gay,* 63 AD2d 590). The cumulative effect of the trial court's failure to properly charge the jury on the law of intent, coupled with the erroneous admission into evidence of the defendant's statement improperly obtained by the Assistant District Attorney after a request for counsel had been made by defendant, and the improprieties of the prosecuting attorney alluded to above, deprived the defendant of a fair trial, thus requiring reversal and a new trial. Mollen, P. J., Lazer, Gibbons and Cohalan, JJ., concur.