525 S.E.2d 301

STATE of West Virginia, Plaintiff below, Appellee,

v.

James Robert STEPHENS, Defendant below, Appellant.

No. 25893.

Supreme Court of Appeals of West Virginia.

Submitted Nov. 2, 1999.

Decided Dec. 3, 1999.

Dissenting Opinion of Justice Maynard Dec. 15, 1999.

Darrell V. McGraw, Jr., Esq., Attorney General, Barbara H. Allen, Esq., Managing Deputy Attorney General, Charleston, West Virginia, Attorneys for Appellee.

Harry E. Stollings, Esq., Summersville, West Virginia, Attorney for Appellant.

STARCHER, Chief Justice:

In the instant case, the appellant, James Stephens, was convicted by a jury on two charges: first degree sexual assault, *W.Va. Code*, 61–8B–3 [1991], and sexual abuse by a custodian, *W.Va.Code*, 61–8D–5 [1998].[1]

 The appellant assigns several errors in his appeal; in light of our resolution of the instant case, we address only two of the assigned errors. We find that a babysitter may be a custodian under *W.Va.Code*, 61–8D–5 [1998]. We also find that the circuit court's failure to grant a mistrial, because of the prosecutor's argument to the jury that the appellant's counsel did not dispute the appellant's guilt, was reversible error.

## I.

### Facts and Background

The facts underlying the offenses that were charged against the appellant—touching and kissing the penis of a 4–year–old child—were reported by the 4–year–old to his mother and repeated to the authorities. The child's veracity was challenged on the basis that he used inappropriate sexual terms. There was no corroborating physical evidence against the appellant. The appellant is a retarded young man, who gave a confession to a police officer. However, the appellant denied committing the offense (and giving the confession) on the witness stand.

The defense offered expert testimony to the effect that the defendant was highly suggestible, and might have confessed as a result of that suggestibility. The evidentiary case against the appellant was certainly sufficient to sustain a conviction. We present such further facts as are necessary in our discussion of the issues.

## II.

### Standard of Review

 The circuit court's ruling on the custodian issue was a purely legal determination that we review *de novo*. We review the circuit court's refusal to grant a mistrial based on improper prosecutorial argument under an abuse of discretion standard.

## III.

### Discussion

#### A.

### Is a Babysitter a Custodian?

There was evidence at trial from which the jury could conclude that the appellant was left in charge of three small children for about a half an hour, while the children's mother took her father-in-law and the appellant's mother to visit a doctor—and that during this time, the appellant sexually molested one of the children.

The appellant argues that the court erred in failing to direct a verdict of acquittal on the charge of sexual abuse by a custodian, a violation of *W.Va.Code*, 61–8D–5 [1998],[2] at

1. The appellant was charged under a previous version of this statute, which was amended in 1998, but not in ways that are relevant to the instant appeal.

2. *W.Va.* Code, 61–8D–5 [1998] states:
 (a) In addition to any other offenses set forth in this code, the Legislature hereby declares a separate and distinct offense under this subsection, as follows: If any parent, guardian or custodian of a child under his or her care, custody or control, shall engage in or attempt to engage in sexual exploitation of, or in sexual intercourse, sexual intrusion or sexual contact with, a child under his or her care, custody or control, notwithstanding the fact that the child may have willingly participated in such conduct, or the fact that the child may have consented to such conduct or the fact that the

child may have suffered no apparent physical injury or mental or emotional injury as a result of such conduct, then such parent, guardian or custodian shall be guilty of a felony and, upon conviction thereof, shall be imprisoned in the penitentiary not less than ten nor more than twenty years, or fined not less than five hundred nor more than five thousand dollars and imprisoned in the penitentiary not less than ten years nor more than twenty years.
 (b) If any parent, guardian or custodian shall knowingly procure another person to engage in or attempt to engage in sexual exploitation of, or sexual intercourse, sexual intrusion or sexual contact with, a child under the care, custody or control of such parent, guardian or custodian when such child is less than sixteen years of age, notwithstanding the fact that the child may have willingly participated in such

the close of the State's case in chief, and erred in submitting to the jury any instructions on that charge.

W.Va.Code, 61–8D–1(4) [1988] defines a "custodian," for purposes of W.Va.Code, 61–8D–5 [1998], as:

> ... a person over the age of fourteen years *who has or shares actual physical possession or care and custody of a child on a full-time or temporary basis, regardless of whether such person has been granted custody of the child by any contract, agreement or legal proceeding.* "Custodian" shall also include, but not be limited to, the spouse of a parent, guardian or custodian, or a person cohabiting with a parent, guardian or custodian in the relationship of husband and wife, where such spouse or other person shares actual physical possession or care and custody of a child with the parent, guardian or custodian.

(Emphasis added.)

The appellant reminds us that penal statutes must be strictly construed against the state, and that terms of art appearing in statutes must be interpreted in accordance with their technical meanings. The appellant notes that the Legislature has distinguished a babysitter from a "custodian" in W.Va. Code, 49–1–3(e)(1) [1999], when it defined examples of "imminent danger to the physical well-being of the child" in the context of an abuse or neglect case: "(1) Nonaccidental trauma inflicted by a parent, guardian, *custodian,* sibling, *or a babysitter or other caretaker.*" (Emphasis added.)

The State responds by saying that "custodian" means one thing in the abuse and neglect statute—there generally implying a court order or other formal grant of legal custody, such as in a divorce case—and means another thing in the criminal context. The State argues that given the ordinary dictionary meanings of the words "custody" (immediate charge and control) and "temporary" (lasting for a limited time) (*Merriam Webster's New Collegiate Dictionary* 1979)— a babysitter is included within the definition of a custodian, absent legislative direction to the contrary.

In *People v. Madril,* 746 P.2d 1329 (Co. 1987), the Colorado Supreme Court analyzed an issue that is close to the issue in the instant case: whether a babysitter is one in a "position of trust" within the meaning of that state's sexual assault statutes.

In *Madril,* the appellant was convicted of sexually assaulting a 9–year–old overnight guest of his two children. The court noted that:

> The statutory definition of one "in the position of trust" includes a person who is a parent ... or a person at the time of the unlawful act is charged with any duty or responsibility regarding the child's ... welfare, or supervision, *no matter how brief the supervision might be.* These statutory categories are obviously broad enough to include ... those who assume responsibility for the temporary care of a child in the parent's absence, such as a babysitter.

*Madril,* 746 P.2d at 1333–34 (citations omitted, emphasis added). Applying the statute to the facts, the court concluded that "[w]hether the defendant's relationship to the child is more appropriately characterized as

conduct or the fact that the child may have suffered no apparent physical injury or mental or emotional injury as a result of such conduct, such parent, guardian or custodian shall be guilty of a felony and, upon conviction thereof, shall be imprisoned in the penitentiary not less than five years nor more than fifteen years, or fined not less than one thousand nor more than ten thousand dollars and imprisoned in the penitentiary not less than five years nor more than fifteen years.

(c) If any parent, guardian or custodian shall knowingly procure another person to engage in or attempt to engage in sexual exploitation of, or sexual intercourse, sexual intrusion or sexual contact with, a child under the care, custody or control of such parent, guardian or custodian when such child is sixteen years of age or older, notwithstanding the fact that the child may have consented to such conduct or the fact that the child may have suffered no apparent physical injury or mental or emotional injury as a result of such conduct, then such parent, guardian or custodian shall be guilty of a felony and, upon conviction thereof, shall be imprisoned in the penitentiary not less than one year nor more than five years.

(d) The provisions of this section shall not apply to a custodian whose age exceeds the age of the child by less than four years.

a 'babysitter' or as a temporary custodian of the victim, the critical consideration in this case is that the statutory definition of 'position of trust' is broad enough to include a person such as the defendant...." *Id.*, 746 P.2d at 1336.

In *State v. Mills*, 52 Or.App. 777, 629 P.2d 861 (1981), the defendant was charged with three counts of child neglect. On motion, the trial judge dismissed the charges on the ground that the charging statute was unconstitutionally vague in certain particulars not relevant to this case. Reversing, the Court of Appeals of Oregon noted in *dictum* that "[t]he term 'custody or control of a child' extends the reach of the [statutory] section beyond the child's parents or guardian; *it includes the temporary custodian, e.g., babysitter*, relative, teacher." *Mills*, 52 Or.App. at 780 n. 1, 629 P.2d at 862 n. 1 (emphasis added).

■ We find the State's argument to be persuasive, and we therefore hold that a babysitter may be a custodian under the provisions of *W.Va.Code*, 61–8D–5 [1998], and whether a babysitter is in fact a custodian is a question for the jury. The circuit court did not err in allowing the challenged charge and instructions relating thereto to go to the jury.

### B.

### *Prosecutorial Argument*

The prosecutor, in the rebuttal portion of his closing argument, told the jury:

> The first thing which I find interesting is that *never one time during [defense counsel's] opening statement did he deny his client did this.*
>
> Think back. Did he just deny it? Did he just try to draw inconsistencies with the evidence? Did he question some of the evidence?
>
> *Has he [defense counsel] ever, since we've been in this courtroom, denied that his client did it?* [emphasis added].

Defense counsel immediately objected to this argument, at which point the circuit judge stated: "I'll sustain the objection.

*What [defense counsel] thinks has nothing to do with this case...." * (Emphasis added.)

Defense counsel then objected to the court's statement, whereupon the court continued:

> Ladies and gentlemen of the jury, what I mean to tell you is: You are to decide the facts from the evidence in this case.
>
> What [defense counsel] says or [the prosecutor] says is not evidence in this case. You heard the evidence, and you make a decision based solely on the evidence.
>
> What [the prosecutor] thinks and what [defense counsel] thinks, those are their interpretations of the evidence as presented, but it's your interpretation that matters; and that's all you have to consider.

Following argument, the circuit court gave an additional instruction to the jury, *sua sponte*, before sending them out to deliberate:

> Ladies and gentlemen, I want to give you one more instruction before I leave. The fact that [the prosecutor] said that [defense counsel] had made no mention of that, [defense counsel] is not permitted by the rules of this Court or by the law to express his personal view of whether his client is guilty [or] is not; and that is why he evidently didn't say it, because the personal opinion of either counsel is not evidence and should not be considered by you as evidence.

A motion for mistrial was made by appellant's counsel after the jury was excused to begin its deliberations:

> Your Honor, we would move for a mistrial.
>
> The comment of [the prosecutor] to challenge my personal state or *my failure to deny*, during my opening statement—or during my closing statement—*that my client is guilty* goes beyond harmless error.
>
> That is plainly beyond any realm of appropriate argument to the jury. It's

grounds for a mistrial, and we would ask that a mistrial be awarded at this time. (Emphasis added.)

The circuit court did not grant the requested mistrial.

The appellant argues that the prosecuting attorney's argument, pointing out that the appellant's counsel had at no time during the trial denied that his client had committed the charged offenses, was both effective and prejudicial.

The prosecuting attorney, of course, wanted the jury to conclude that the appellant was guilty. In furtherance of that goal, the prosecutor argued to the jury that they could infer, from defense counsel's failure to deny his client's guilt, that the appellant was guilty: "Has he ever, since we've been in this courtroom, denied that his client did it?"

We agree that this was an effective and damaging argument—and that the prosecutor intended it to be so. The question before us is whether it was unfair and impermissible, and if so, whether the circuit court should have granted a mistrial because of the argument.

The appellant argues that this argument was an unfair and impermissible attack upon a right that is so fundamental to our adversarial system of justice that it is embodied within the *Rules of Professional Conduct.*

Rule 3.4 of the *West Virginia Rules of Professional Conduct* states that "... [a] lawyer shall not ... in trial ... state a personal opinion as to the justness of a cause, the credibility of a witness, ... or the guilt or innocence of an accused."

Thus, the appellant argues (and the State in the instant appeal concedes) that it would have been a violation of this rule for defense counsel to make any statement to the jury, such as the one the prosecuting attorney argued that defense counsel should have made.

Responding to the appellant's objection to the prosecutor's argument, the circuit court told the jury that "what defense counsel thinks has nothing to do with this case."

Although in making this statement to the jury, the circuit court was trying in good faith to address the improper prosecutorial argument—the cure was in its way as unfairly prejudicial as the prosecutor's argument. The state concedes this point as well.

For what (attentive) defendant would not be troubled if, following the defendant's attorney's closing argument, the trial judge told the jury that what the defendant's lawyer thought had nothing to do with the case?

Such a statement could certainly have a significant potential to reduce the impact of the defendant's lawyer's arguments to the jury. And, the judge's remarks might well be taken as corroborating the immediately prior prosecutorial suggestion that the defendant's lawyer thinks that his client is guilty—"although that fact is irrelevant."

This Court has recognized that a similar argument by a prosecutor was reversible error, in *State v. Green,* 163 W.Va. 681, 260 S.E.2d 257 (1979).

In *Green,* the prosecutor said: "If [defense counsel] can think of one reason, one lousy little reason at all why this girl would turn a finger at his client sitting over there, other than the fact that he committed this crime, he would tell you what it was.... there is no one in the Court Room that ever said he didn't do it." 163 W.Va. at 695, 260 S.E.2d at 265.

Although we characterized the prosecutorial remarks that were at issue in *Green* as a prosecutor's comment on the defendant's failure to testify, the prosecutor's tactic in both *Green* and in the instant case was to tell the jury that they could infer guilt, from the defense's failure to affirmatively assert the defendant's innocence.

A review of case law from other jurisdictions shows that argument by a prosecutor suggesting that a defense attorney does not have confidence in his client's case has been held to be improper by essentially every court that has addressed the issue—and that many courts have reversed criminal convictions, based on such improper arguments. *See* 89 ALR3d 263, "Propriety and Prejudicial Effect of Prosecutor's Argument Giving Jury Impression that Defense Counsel Believes Accused Guilty." *See State v. Reilly,*

446 A.2d 1125 (Me.1982) (conviction reversed—curative instructions did not overcome prejudicial effect of prosecutor's argument to jury suggesting that defense counsel disbelieved his client); *People v. Jones,* 74 A.D.2d 854, 425 N.Y.S.2d 376 (1980) (conviction reversed—defendant deprived of fair trial by errors that included prosecutor's argument to jury suggesting that defense counsel lacked confidence in his client's case); *Chandler v. State,* 572 P.2d 285 (Okla.Crim.App. 1977) (conviction reversed—prosecutor's argument to jury suggesting that defense counsel had no opinion about his client's guilt impaired defendant's right to representation); *People v. Kane,* 57 A.D.2d 575, 393 N.Y.S.2d 439 (1977) (conviction reversed—prosecutor's argument to jury, suggesting that defense counsel didn't believe his client, was deplorable and deprived defendant of a fair trial and required reversal); *People v. Monroe,* 66 Ill.2d 317, 5 Ill.Dec. 824, 362 N.E.2d 295 (1977) (conviction reversed due to prosecutor's argument to jury suggesting that defense counsel didn't believe his client's story); *People v. Fluker,* 51 A.D.2d 1045, 381 N.Y.S.2d 330 (1976) (prosecutor's argument to jury suggesting that defense counsel didn't believe his client, even if not objected to, required reversal); *People v. Tatum,* 54 A.D.2d 950, 388 N.Y.S.2d 329 (1976) (prosecutor's argument to jury suggesting that defense counsel didn't believe his client, even if not objected to, required reversal); *Commonwealth v. Joyner,* 469 Pa. 333, 365 A.2d 1233 (1976) (conviction reversed, circuit court should have granted mistrial after prosecutor's argument to jury suggesting that defense counsel does not believe his own client); *People v. Coles,* 47 A.D.2d 905, 366 N.Y.S.2d 216 (1975) (conviction reversed due to prosecutor's unobjected-to argument to jury suggesting that defense counsel didn't believe his client's alibi); *People v. Maldonado,* 50 A.D.2d 556, 376 N.Y.S.2d 512 (1975) (conviction reversed—curative instructions by judge did not overcome prosecutor's argument to jury suggesting that defense counsel did not dispute his client's guilt); *Anderson v. State,* 525 S.W.2d 20 (Tex.Crim.App.1975) (despite court admonishment, prosecutor's argument to jury suggesting that defense counsel did not say his client was not guilty was revers-

ible error); *Dupree v. State,* 219 Tenn. 492, 410 S.W.2d 890 (1967) (conviction reversed due to prosecution's argument to jury suggesting that defense counsel didn't believe their client, which violated rule prohibiting counsel from expressing personal opinion); *People v. Tassiello,* 300 N.Y. 425, 91 N.E.2d 872 (1950) (conviction reversed—prosecutor's retraction of argument to jury suggesting that defense counsel knew his client was guilty did not cure error); *Commonwealth.v. Williams,* 309 Pa. 529, 164 A. 532 (1932) (reversal due in part to prosecutor's argument to jury suggesting that defense counsel didn't believe in his client's defense); *Goff v. Commonwealth,* 241 Ky. 428, 44 S.W.2d 306 (1931) (conviction reversed due to prosecutor's argument to jury suggesting that defense counsel had no confidence in his case); *People v. Treat,* 77 Mich. 348, 43 N.W. 983 (1889) (conviction reversed—curative instruction and admonishment could not overcome prosecutor's argument to jury suggesting that defense counsel did not believe in his client's innocence).

We agree with the teaching of these cases—that such a prosecutorial argument is improper, and may be grounds for reversal of a conviction.

■ A judgment of conviction will be reversed because of improper remarks made by a prosecuting attorney to a jury that clearly prejudice the accused or result in manifest injustice. *See* Syllabus Point 5, *State v. Ocheltree,* 170 W.Va. 68, 289 S.E.2d 742 (1982).

The state argues that despite the error in the prosecutor's argument and the judge's initial "curative" instructions, the court's final remarks on the subject to the jury "undid the harm."

■ Judge Learned Hand once said that an instruction to the jury to ignore an objectionable piece of testimony is the "recommendation to the jury of a mental gymnastic which is beyond, not only their powers, but anybody's else." *Nash v. United States,* 54 F.2d 1006, 1007 (2d Cir.1932). Where an instruction to a jury to disregard an improper argument is ineffective, a mistrial is an appropriate remedy. *See State v. Gwinn,*

169 W.Va. 456, 471, 288 S.E.2d 533, 542 (1982); *State v. Bennett,* 179 W.Va. 464, 473, 370 S.E.2d 120, 129 (1988).[3]

As the instant case illustrates, the ability of a "curative" instruction to "unring the bell" with respect to such prosecutorial argument is uncertain at best.[4] The prosecutorial argument in question goes to not a partial, minor, or tangential issue in the case—but to the core issue of a defendant's overall guilt. The improper argument focuses directly on and derives its force from the failure of the defendant's chief spokesperson to come forward with an affirmative statement to the effect that his client is innocent. The argument's use in rebuttal, when defense counsel can say nothing more, is particularly effective. By charging that defense counsel is appearing on behalf of a case that he or she cannot vouch for, the argument attacks the sincerity of and enlists the unwilling support of the very person who addresses the jury on behalf of the defendant, and on whose efforts the defendant must rely wholly at trial.

In *State v. Grubbs,* 178 W.Va. 811, 364 S.E.2d 824, 830 (1987), this Court stated:

Independent of the Code of Professional Responsibility, we have historically recognized that the prosecuting attorney occupies what we term a quasi-judicial role. In *State v. Boyd,* 160 W.Va. 234, 233 S.E.2d 710 (1977), we reviewed a number of our earlier cases and came to this conclusion in Syllabus Point 3:

"The prosecuting attorney occupies a quasi-judicial position in the trial of a criminal case. In keeping with this position, he is required to avoid the role of a partisan, eager to convict, and must deal fairly with the accused as well as the other participants in the trial. It is the prosecutor's duty to set a tone of fairness and impartiality, and while he may and should vigorously pursue the State's case, in so doing he must not abandon the quasi-judicial role with which he is cloaked under the law."

*See also State v. Moore,* 186 W.Va. 23, 409 S.E.2d 490 (1990) (cumulative effect of prosecutor's comments constituted plain error, conviction reversed); *State v. Moss,* 180 W.Va. 363, 376 S.E.2d 569 (1988) (prosecutor's remarks during closing argument were so egregious that they constitute plain error; whether improper argument by the prosecution has so prejudiced the trial process as to require reversal must be gauged from the facts of each trial, conviction reversed); *State v. Critzer,* 167 W.Va. 655, 280 S.E.2d 288 (1981) (prosecutorial argument expressed personal beliefs as to defendant's guilt, conviction reversed); *State v. Summerville,* 112 W.Va. 398, 164 S.E. 508 (1932) (improper prosecutorial argument not cured by instructions to jury, conviction reversed); *State v. Morris and Johnson,* 96 W.Va. 291, 122 S.E. 914 (1924) (improper prosecutorial remarks; court had instructed the jury to disregard, but the error was not cured by the instruction; conviction reversed).

We have recently held that:

Four factors are taken into account in determining whether improper prosecutorial comment is so damaging as to require reversal: (1) the degree to which the prosecutor's remarks have a tendency to mislead the jury and to prejudice the accused; (2) whether the remarks were isolated or extensive; (3) absent the remarks, the strength of competent proof introduced to establish the guilt of the accused; and (4)

---

3. "If ... the objector should still consider that the interests of his client have been irremediably prejudiced and that the actions of the trial court [...] have not been effective in removing from the minds of the jury the prejudicial effect of the objectionable matter, then a motion must be made at the time for a mistrial." *Anderson v. Jaeger,* 317 So.2d 902, 906–07 (Miss.1975).

*Quoted in Reed v. Wimmer,* 195 W.Va. 199, 204 n. 4, 465 S.E.2d 199, 204 n. 4 (1995).

4. In some cases where the improper argument that is in question in the instant case arises, it

seems to be a variation on the universally condemned and prohibited tactic of commenting on the failure of a defendant to testify (although this was not the case in the instant case, where the appellant did take the stand). In both cases, the more that the trial court tells the jury that a lawyer is not permitted to express a personal opinion about his client's guilt or innocence, or that such an expression of opinion would in any event be irrelevant—or that a defendant is not obliged to testify—the more the jury is reminded that there has been no such expression (or testimony).

whether the comments were deliberately placed before the jury to divert attention to extraneous matters.

Syllabus Point 6, *State v. Sugg*, 193 W.Va. 388, 456 S.E.2d 469 (1995).

Applying these factors in the instant case, the prosecutor's remarks had a substantial tendency to mislead the jury and to prejudice the accused. As the court noted in *State v. Reilly*, *supra*, 446 A.2d at 1129, the prosecutor's

> ... remark [that defense counsel had not denied his client's guilt] was particularly damaging inasmuch as the jury would presume that defense counsel were in a position to know the true facts of the case.... The prosecution surely knew that the personal thoughts and beliefs of defense counsel were totally irrelevant and not a matter for jury consideration. The improper presentation of an irrelevant issue such as this could only serve to mislead the jury[.]

While the prosecutor's improper remarks in the instant case were not extensive, neither were they an isolated or brief, offhand comment. Rather, the remarks were a deliberate choice by the prosecutor, and were used to "lead off" the prosecutor's rebuttal argument. "They were neither isolated nor fortuitous and can only be viewed as a calculated strategy[.]" *State v. Oxier*, 175 W.Va. 760, 764, 338 S.E.2d 360, 364 (1985) (conviction reversed due to prosecutorial arguments misleading the jury about the nature of reasonable doubt). And as we have noted, the competent proof against the appellant was substantial, but not overwhelming.[5]

As the court stated in *People v. Tassiello*, *supra*, 91 N.E.2d at 874, regarding a prosecutor's suggestion that the defense counsel had become convinced of his client's guilt:

> It is difficult to conceive of any statement by a prosecuting attorney which would have been more indelibly impressed upon a juror's mind.

And as the court stated in *People v. Treat*, *supra*, 43 N.W. at 984:

> It is thus seen that the circuit judge did all in his power to obviate the error committed by the prosecuting attorney. But it was impossible for him to eradicate the evil effect of such statement to the jury. The effect of such statement was ... to destroy entirely the force of the argument which his counsel had made in his favor, and make it appear that he was rendering his client a merely perfunctory service[.] [6]

■ For the foregoing reasons, we hold that it is improper for a prosecuting attorney to suggest or argue to the jury, directly or indirectly, that defense counsel believes that his or her client is guilty. If such an argument is made, a circuit court may in its discretion presume that the prejudice caused by such argument is grounds for declaring a mistrial.

Applying this criterion to the instant case, and based on the foregoing discussion, we conclude that in the instant case there was sufficient unfair prejudice in the prosecutor's

---

5. Even if the evidence against the appellant were characterizable as overwhelming, we cannot see merit, viability, or integrity in an analysis that would in effect more readily tolerate prosecutorial misconduct in those cases where the evidence tends to show more clearly that a defendant is guilty—but would be less tolerant of prosecutorial misconduct in the trial of a defendant against whom the evidence happens to be less compelling. (What evidence is available in a given case, of course, is as much a product of happenstance as of anything else.) Such a distinction would tend to encourage prosecutorial "piling on" in precisely those cases where a defendant has the most need of scrupulous adherence to the rules. Such a distinction might also arguably have the defect of being contrary to the guarantee of equal protection of the law.

6. It is important to recognize that the unfair prejudice to the defendant that is at issue in such cases is not the result of inadvertence or even neglect by the prosecution—such as a witness blurting out improper evidence. Rather, there is a choice by a prosecutor to use an argument that has been universally determined to be improper, in more than 100 years of jurisprudence.

If such argument by a prosecutor has a substantial likelihood of being considered to be readily curable or harmless, the disincentive to choose to use the tactic will be minimal. In such circumstances, for a trial court or appellate court responding to a prosecutor's use of such an argument, the balance must be struck on the side of deterring the use of this tactic, and insuring that such an argument does not infect the jury that decides a defendant's fate, even if a mistrial is the only available choice.

argument to the jury, to the effect that defense counsel had failed to deny that the appellant had committed the offenses charged, so that the circuit court abused its discretion in not granting a mistrial. We reverse the appellant's conviction and remand for a new trial.

Reversed and Remanded.

Justice SCOTT did not participate in the decision of the Court.

MAYNARD, Justice, dissenting:
(Filed Dec. 15, 1999)

I dissent because I believe the circuit court's second cautionary instruction to the jury effectively cured the prejudice which resulted from the prosecuting attorney's improper remarks.

This Court has now reversed a murder conviction and a conviction for sexual abuse of a four-year old child within the space of two weeks based on the arguments of prosecutors. *See State v. Swafford,* 206 W.Va. 390, 524 S.E.2d 906 (1999). It appears from these decisions that this Court does not believe that prosecutors should be allowed to make any effective closing arguments to a jury. It must be remembered that criminal trials are adversarial proceedings in which prosecutors represent the people as well as the victims of crime. Accordingly, prosecutors have not only the right but the duty to make persuasive and compelling arguments. Further, prosecutors have wide latitude within the rules in making their arguments. This Court, however, has tied the hands of prosecutors with a perplexing collection of arbitrary, complex and unfair prohibitions, scattered among several cases, which no one can follow. These prohibitions have granted too much power to defendants and left prosecutors hamstrung and weakened.

In the case at bar, the State concedes that certain remarks made by the prosecuting attorney during his closing argument were improper and that the circuit court's first attempt to cure. the prejudice only made matters worse. However, I agree with the State that the circuit court's second cautionary instruction was sufficient to cure the prejudice.

This Court has stated, and furthermore, it is abundantly clear that "[a] judgment of conviction will not be set aside because of improper remarks made by a prosecuting attorney to a jury which do not clearly prejudice the accused or result in manifest injustice." Syllabus Point 5, *State v. Sugg,* 193 W.Va. 388, 456 S.E.2d 469 (1995). To determine whether the remarks prejudice the accused or result in manifest injustice, *Sugg* sets forth a four-part test. The majority quotes the four-part test, but then omits any discussion applying the *Sugg* test to the facts at hand and simply concludes that "[a]pplying these factors in the instant case, the prosecutor's remarks had a substantial tendency to mislead the jury and to prejudice the accused." That may be true, but when that factor is balanced with the other factors suggested by *Sugg,* I believe that one must conclude a new trial is not warranted. This remark made by the prosecutor was an isolated remark which was not meant to divert the jury's attention to extraneous matters. In fact, the prosecutor's remarks directly related to the matter at hand. Furthermore, the evidence of guilt was overwhelming.

This case is not synonymous with *State v. Moss,* 180 W.Va. 363, 368, 376 S.E.2d 569, 574 (1988), wherein no corrective instruction was given by the court. The prosecutor's improper closing remarks were summarized by this Court as follows:

The prosecutor expressed his personal opinion as to the credibility of the State's witnesses. Code of Professional Responsibility DR 7–106(C)(4). He characterized the appellant as a "psychopath" with a "diseased mind." Syl. Pt. 3, *State v. Brown,* 104 W.Va. 93, 138 S.E. 664 (1927). He appealed to the passions and prejudices of the jury by imploring that they return verdicts of first degree murder without recommendation of mercy so that the appellant would "never be released to slaughter women and children of Kanawha County." *Critzer,* 167 W.Va. at 661, 280 S.E.2d at 292. He misstated crucial evidentiary matters. And he referred the jury to the fact that the deceased woman's husband

took a polygraph, arguing to the jury "that is one reason we know he didn't do it." (Footnote omitted).

The prosecutor in *Moss* also stated on a radio talk show, "No doubt in my mind that he in fact is the murderer of Vanessa Reggettz and her two children." *Id.*, 180 W.Va. at 366, 376 S.E.2d at 572. The talk show aired during a recess in the trial. Unlike the case at bar, the circuit court made no attempt to cure these egregious comments.

The prosecuting attorney's comments obviously violated Rule 3.4(e) of the West Virginia Rules of Professional Conduct. But the court's curative instruction given just prior to releasing the jury to begin deliberating effectively cured any prejudice the prosecutor's remarks caused. The remarks made during the trial must be viewed in light of the curative instruction and the balancing test set forth in *Sugg*.

As I cannot say the trial judge erred in failing to grant a mistrial, I would affirm. Accordingly, I respectfully dissent.