# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.) No. 17-0712** (Fayette County 17-F-17)

**Jordan Goard,**
**Defendant Below, Petitioner**

**FILED**

**June 15, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Jordan Goard, by counsel Joseph M. Mosko, appeals the Circuit Court of Fayette County's July 31, 2017, order denying his motion for a new trial. Respondent State of West Virginia, by counsel Gordon L. Mowen, II, filed a response. Petitioner filed a supplemental appendix and reply. On appeal, petitioner contends that the circuit court erred in admitting surveillance footage without a sufficient foundation having been laid, disallowing cross-examination of a certain witness regarding overheard statements, and overruling an objection to an inflammatory remark during the State's closing argument.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner was indicted in January of 2017 for one count of conspiracy to commit a felony, one count of first-degree robbery, and one count of grand larceny.[1] These charges arose from a controlled drug buy initiated by a confidential informant from petitioner at Plateau Oaks Apartments ("Plateau Oaks").

At petitioner's trial, which began on April 20, 2017, Mason Hines, a crime scene investigator, fingerprint examiner, and mobile device analyst with the City of Oak Hill Police Department, testified that Plateau Oaks maintains surveillance cameras, and he has accessed the footage captured by these cameras on multiple prior occasions. In obtaining surveillance footage from Plateau Oaks in the course of the investigation following the controlled drug buy, Mr. Hines detailed that he

> pulled up the video, [searched] for the time and witnessed – saw on the video an
> event that Sergeant Young requested that I make a copy of. You put a thumb drive

---

[1]The grand larceny charge was later dismissed.

1

into the DVR, set your parameters, - when you want it to start, when you want it to stop, - and you make a copy of that part of the video onto the thumb drive.

Mr. Hines stated that he did not tamper with or alter the video in any way, and that it was in the same condition as when he retrieved it from Plateau Oaks the day following the controlled drug buy. Petitioner objected to the admission of the video on the ground that "Mr. Hines went and got a copy of this video footage, but there's no one from the apartment complex that regularly maintains or manages that footage." The circuit court overruled the objection and admitted the footage.

Bryanna Cummings, the confidential informant who purchased drugs from petitioner, also testified at his trial. She testified that the police provided her with money to purchase and a purse with a camera in it to record the transaction. After purchasing the drugs at Plateau Oaks, Ms. Cummings began walking away through the parking lot, but petitioner followed her, intent on taking the purse. Ms. Cummings tried to get away from petitioner, but he picked her up, carried her closer to the apartments, and "slammed [her] down on the curb and then tried to jerk the purse off." Petitioner's codefendant, Robert Lee, walked outside the apartment complex and asked petitioner what was going on.[2] Ms. Cummings testified that petitioner informed Mr. Lee, "She's wearing a wire. She has a wire." Ms. Cummings stated that Mr. Lee then pointed a handgun at her and instructed her to give petitioner the purse or he would shoot her. Petitioner struck the back of Ms. Cummings's head, and Ms. Cummings then "gave up fighting" with petitioner as he jerked the purse loose from her body.

The State moved to publish the surveillance video, which captured the altercation, during Ms. Cummings's testimony. Petitioner again objected because the State had not produced anyone who testified that the "videos are kept in the regular course of business, and I believe the State would be required to establish a foundation." The State reminded the circuit court that the video had already been admitted, thus arguing that the objection was moot. The circuit court found that the video was demonstrative and that Mr. Hines "testified that he obtained it from Plateau Oaks where this supposedly occurred and it hadn't been altered in any respect." It then overruled the objection, again admitted the video, and granted the State's motion to publish it to the jury.

Shante Maddox testified at trial on behalf of Mr. Lee. Ms. Maddox identified petitioner as the individual who fought with Ms. Cummings outside of the apartment complex. During the course of her testimony, she also identified Ms. Cummings by her first name. Accordingly, Ms. Maddox was asked whether she knew Ms. Cummings. Ms. Maddox responded, "No. I just heard somebody else out there say her name." Ms. Maddox clarified that she heard someone outside the courtroom "speaking on her about his case and - ." The parties approached the bench at this point and indicated a "need to put something on the record for it." During the discussion about what Ms. Maddox overheard, however, the court reporter's equipment malfunctioned and the proceedings were not recorded. Petitioner's counsel represents that Ms. Maddox said that she overheard another woman discussing Ms. Cummings's "reputation for engaging in various and sundry drug[-]related activities." Counsel further represents that he requested to cross-examine Ms. Maddox before the jury about what she overheard, but the circuit court denied the request.

---

[2]Petitioner and Mr. Lee were tried jointly.

2

At the close of petitioner's two-day trial, the jury found him guilty of conspiracy and first-degree robbery. On June 16, 2017, the parties appeared for sentencing, and the circuit court sentenced petitioner to an indeterminate term of one year to five years of incarceration for his conspiracy conviction and a determinate term of sixty years of incarceration for his first-degree robbery conviction. Petitioner moved for a new trial on May 1, 2017, which the circuit court denied by order entered on July 31, 2017. It is from this order that petitioner appeals.

We apply the following standard of review to a circuit court's denial of a motion for a new trial:

> In reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a de novo review.

Syl. Pt. 1, *State v. Jenner*, 236 W.Va. 406, 780 S.E.2d 762 (2015) (citation omitted).

Petitioner raises three assignments of error on appeal. First, petitioner argues that the circuit court erred in admitting the surveillance footage from Plateau Oaks without a sufficient foundation. Petitioner notes that Mr. Hines was not an employee of Plateau Oaks and possessed no knowledge of the apartment complex's surveillance system or of surveillance systems generally. Petitioner also highlights that Mr. Hines did not testify to the accuracy, completeness, or reliability of the surveillance footage. Petitioner argues that, under this Court's decision in *State v. Boyd*, 238 W.Va. 420, 796 S.E.2d 207 (2017), additional testimony was necessary to authenticate the video footage. Petitioner, therefore, contends that the circuit court abused its discretion by not requiring the State to "put forth a more thorough showing of the absolute authenticity and completeness of the surveillance footage."

Rule 901(a) of the West Virginia Rules of Evidence provides that "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." This standard of admissibility "is rather slight, *i.e.*, is the evidence sufficient 'to support a finding' that the object is authentic." *Boyd*, 238 W.Va. at 443, 796 S.E.2d at 230 (citation omitted). Further, "[a] trial court is afforded wide discretion in determining the admissibility of videotapes and motion pictures[,]" Syl. Pt. 1, *Roberts v. Stevens Clinic Hosp., Inc.*, 176 W.Va. 492, 345 S.E.2d 791 (1986), and we will not disturb rulings on the authenticity of evidence absent an abuse of that discretion, *Boyd*, 238 W.Va. at 443, 796 S.E.2d at 230 (citation omitted).

In *Boyd*, we addressed the appellant's contention that certain dash camera video footage was not properly authenticated. *Id.* The officer from whose cruiser the footage was obtained did not testify as he was no longer employed with the police department, but the prosecution called three other officers to authenticate the footage. *Id.* at 443-44, 796 S.E.2d at 230-31. Noting that "[t]he burden to authenticate under the rule is not high – only a prima facie showing is

required[,]" we rejected the appellant's argument that the videotape could only be authenticated by the officer from whose cruiser the footage was obtained. *Id.* at 444, 796 S.E.2d at 231. We found that the dash camera videotape was sufficiently authenticated and that "[t]he factual determination of whether evidence is that which the proponent claims is ultimately reserved for the jury." *Id.* (citation omitted).

Notably, we did not articulate any specific testimony that must be elicited to authenticate video footage. Rather, as set forth above, "[t]he burden to authenticate under the rule is not high[.]" *Id.* Mr. Hines testified that Plateau Oaks maintains video surveillance in its office, which he has accessed on several occasions. He informed the jury of the steps he took to obtain a copy of the relevant footage, which itself is date- and time-stamped, and that he did not tamper with or alter it. Additionally, it is within the jury's province to determine whether evidence is that which the proponent claims. *Id.* Accordingly, we find no abuse of discretion in the circuit court's finding that the surveillance video was properly authenticated.

Petitioner's second assignment of error is that the circuit court erred in prohibiting cross-examination of Ms. Maddox on comments she overheard about Ms. Cummings's purported "reputation for engaging in various and sundry drug[-]related activities." As a result of this prohibition, petitioner "could not elicit testimony that [Ms. Cummings] was not credible[,]" despite her credibility being "the central thrust of [his] defense in closing argument."

We have previously held that "[t]he extent of the cross-examination of a witness is a matter within the sound discretion of the trial court; and in the exercise of such discretion, in excluding or permitting questions on cross-examination, its action is not reviewable except in case of manifest abuse or injustice." Syl. Pt. 4, *State v. Carduff*, 142 W.Va. 18, 93 S.E.2d 502 (1956). As explained above, the circuit court's discussion with the parties concerning the ability to cross-examine Ms. Maddox on what she overheard in the hallway was not recorded due to an equipment malfunction. However, once the parties reappeared before the jury and recording resumed, petitioner's counsel elicited the following testimony on cross-examination:

> Q    And you just testified a minute ago – you mentioned [Ms. Cummings's] first name, did you not?

> A    Yes, I did because some – the lady out there was just speaking about it.

> Q    Okay. Did you have any conversations with the attorney handling Mr. Lee's case as to communication with folks in the hallway?

> A    No, sir.

> Q    No, sir? So you were never informed it's not good for a witness to talk to people and the should [sic] –

> A    Yes, he told me not to talk to anybody.

4

Q    Okay. Well, why didn't you remove yourself from the hallway when this lady was going on about [Ms. Cummings]?

A    She was on the phone and –

At this point, the prosecutor objected to the line of questioning because "[w]e're invariably going to get into hearsay when she – [.]" The circuit court expressed its agreement: "Yeah, that's – I think that's – [.]" Petitioner's counsel then offered, "I'll cease with this line of questioning, Your Honor." Petitioner's counsel, therefore, voluntarily abandoned this line of questioning. Moreover, petitioner has failed to demonstrate the admissibility of this testimony had he been permitted to elicit it. Finally, petitioner has not shown "manifest abuse or injustice" as a result of his inability to pursue this line of questioning. Petitioner cross-examined Ms. Cummings on her credibility generally[3] and with respect to drug-related activities specifically.[4] Accordingly, petitioner has failed to establish that the circuit court abused its discretion in disallowing him to cross-examine Ms. Maddox on remarks she overhead in the hallway.

Petitioner's final argument on appeal is that the circuit court erred in overruling his objection to statements made by the prosecutor in closing argument. During the State's rebuttal closing argument, the prosecutor began by responding to the critiques on witness credibility and purported gaps in the evidence argued by petitioner in closing. In so doing, he stated,

---

[3]During his cross-examination of Ms. Cummings, counsel for petitioner accused her of "essentially commit[ing] tax evasion" given her testimony that she did not report her drug interdiction income to state and federal tax authorities and of being motivated by money rather than altruism in helping the police. Counsel also inquired into her prior criminal history and, during closing arguments, stated that Ms. Cummings "completely and utterly, without any regard to the issues, she completely and utterly lied about [her] battery conviction. So when we want to talk about credibility, you guys are charged with weighing the credibility of the witnesses."

[4]Petitioner's counsel asked Ms. Cummings whether she had done drugs. Ms. Cummings testified that she had, and had purchased drugs from "[p]robably about [forty] or [fifty] people." Counsel inquired, "Did you have a drug of choice?" Ms. Cummings responded in the negative, and counsel continued,

Q    All right. Just whatever you could get your hands on. Methamphetamine, cocaine, opiates?

A    I did not do methamphetamine.

. . .

Q    But that's a yes on the opiates and –

A    Yes.

I'll tell you this: I trust – I've never looked down the barrel of a gun. A barrel of a gun is about the size of your pinky finger, but when you're looking down it, it's about the size of a manhole cover. Right? Do you-all trust the two guys that are being paid to get these guys off or are you going to trust the woman that had this thing (indicating) pointed at her, heard these guys threaten her[.]

Petitioner's counsel objected, arguing "[w]e are being paid because we have bills to pay, but we do this because we're under very serious ethical and professional obligations to do the best job we can." The circuit court overruled the objection, finding that "it's argument."

Petitioner argues that the comment implied that counsel was "only in it for the money," that counsel's role was merely a formality, and that counsel's arguments were perfunctory and entitled to less weight. Petitioner also likens the comments here to those made in *State v. Stephens*, 206 W.Va. 420, 525 S.E.2d 301 (1999). In *Stephens*, the prosecutor argued in closing that the appellant's counsel did not dispute the appellant's guilt, which we found was reversible error. *Id.* at 421, 525 S.E.2d at 302.

We begin by observing that the State's remarks are unlike those made in *Stephens*. In *Stephens*, the prosecutor told the jury, "Has he [defense counsel] ever, since we've been in this courtroom, denied that his client did it?" *Id.* at 423, 525 S.E.2d at 304. This statement, in effect, told the jury "that they could infer guilt[] from the defense's failure to affirmatively assert the defendant's innocence." *Id.* at 424, 525 S.E.2d at 305. Accordingly, *Stephens* fails to lend support for a reversal here, as the State's argument does not inform the jury that they can infer guilt from the defense's failure to assert innocence.

Moreover, we have previously held that "[a] judgment of conviction will not be set aside because of improper remarks made by a prosecuting attorney to a jury which do not clearly prejudice the accused or result in manifest injustice." Syl. Pt. 5, *State v. Sugg*, 193 W.Va. 388, 456 S.E.2d 469 (1995). "[A] trial court exercises reviewable discretion when ruling on the propriety of a prosecuting attorney's comments to the jury." *State v. Rollins*, 233 W.Va. 715, 727, 760 S.E.2d 529, 541 (2014) (citation omitted). We consider four factors in determining whether an improper prosecutorial comment is so damaging that reversal is warranted:

(1) the degree to which the prosecutor's remarks have a tendency to mislead the jury and to prejudice the accused; (2) whether the remarks were isolated or extensive; (3) absent the remarks, the strength of competent proof introduced to establish the guilt of the accused; and (4) whether the comments were deliberately placed before the jury to divert attention to extraneous matters.

*Sugg*, 193 W.Va. at 393, 456 S.E.2d at 474, Syl. Pt. 6, in part.

Assuming without deciding that the State's comment was improper, petitioner has also failed to demonstrate that reversal is warranted under *Sugg*. First, the argument did not mislead the jury or prejudice the accused in light of the evidence presented in this case, including Ms. Cummings and Ms. Maddox's positive identifications of petitioner as the perpetrator and the apartment complex's surveillance footage. Second, petitioner admits the remark constituted a

"relatively minor part" of the State's closing argument. Third, the competent proof to demonstrate petitioner's guilt, outlined above, was strong, absent the remarks. Finally, the comment was not deliberately placed before the jury to divert its attention to extraneous matters. Rather, the comment was a response to petitioner's counsel's critique of the evidence and witnesses' credibility.

For the foregoing reasons, the circuit court's July 31, 2017, order denying petitioner's motion for a new trial is hereby affirmed.

Affirmed.

**ISSUED**:  June 15, 2018

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Menis E. Ketchum
Justice Elizabeth D. Walker

Justice Allen H. Loughry II, suspended and therefore not participating