533 S.E.2d 48

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Gene Harold WALKER, Defendant Below, Appellant.**

**No. 26657.**

Supreme Court of Appeals of West Virginia.

Submitted Feb. 22, 2000.

Decided June 14, 2000.

Dissenting Opinion of Chief Justice Maynard June 28, 2000.

Concurring Opinion of Justice Starcher July 20, 2000.

---

Gregory L. Ayers, Deputy Public Defender, Charleston, West Virginia, Attorney for the Appellant.

Darrell V. McGraw, Jr., Attorney General, Barbara H. Allen, Managing Deputy Attorney General, Charleston, West Virginia, Attorney for the Appellee.

PER CURIAM:

This appeal was filed by Gene Harold Walker, appellant/defendant (hereinafter referred to as "Mr. Walker"), from his conviction in the Circuit Court of Kanawha County of voluntary manslaughter with the use of a firearm. Mr. Walker was sentenced to prison for 15 years. Arguing to this Court that the circuit court committed error by denying his motion for a mistrial, Mr. Walker contends that a mistrial resulted from: (1) the prosecutor's cross examination of Mr. Walker on his post-*Miranda* silence, and (2) prosecutorial comments, during closing arguments, regarding Mr. Walker's post-*Miranda* silence. Based upon the parties' arguments on appeal, the record designated for appellate review, and the pertinent authorities, we reverse the decision of the Circuit Court of Kanawha County.

## I.

### FACTUAL AND PROCEDURAL HISTORY

On the evening of December 19, 1995, Mr. Walker went to a local nightclub in Charleston, called the 935 Club, armed with a semi-automatic handgun. While in the nightclub, Mr. Walker got into an argument with another patron, Marshall Donahue. The argument concerned $20.00 that Mr. Donahue owed to Mr. Walker. Another patron, Mr. Harold Belcher, intervened in defense of Mr. Donahue.

During his trial, Mr. Walker presented evidence that Mr. Belcher approached him, cut him on the arm with a knife, and stated that "he was going to gut [Walker] like a hog." Mr. Walker admitted firing a shot into Mr. Belcher's shoulder after being cut with the knife. Other patrons in the nightclub then attacked Mr. Walker, at which time a second shot was fired from his gun. The second shot struck Mr. Belcher in the chest area fatally wounding him. Mr. Walker testified that the second shot was fired accidentally after the other patrons attacked him.

Mr. Walker was hospitalized following the shooting incident as a result of the severe beating he received from the nightclub patrons. A Charleston Police detective, Richard Westfall, visited Mr. Walker in the hospital. Detective Westfall first read Mr. Walker his *Miranda* rights, and then asked him if he wished to make a statement about the shooting. Mr. Walker indicated that he did not want to make a statement. Detective Westfall immediately turned and proceeded to leave. As Detective Westfall was leaving, Mr. Walker stated, "I'm sorry I shot the old man. It was an accident."

On April 3, 1996, Mr. Walker was indicted by a grand jury on the charge of first degree murder for the death of Mr. Belcher. After a subsequent trial, Mr. Walker was convicted by a jury of voluntary manslaughter with the use of a firearm on February 18, 1998. He was sentenced to prison for fifteen years. Following the circuit court's denial of his post-trial motions, Mr. Walker filed this appeal.

## II.

### STANDARD OF REVIEW

■ The instant case requires our review of the introduction of evidence during cross examination, and of closing argument remarks by the State. This Court has indicated that "[t]he evidentiary rulings of a circuit court, including those affecting constitutional rights, are reviewed under an abuse of discretion standard." *State v. Marple,* 197 W.Va. 47, 51, 475 S.E.2d 47, 51 (1996) (citations omitted). Moreover, "[e]ven if we find the circuit court abused its discretion, the error is not reversible unless the defendant was prejudiced." *Id.* (citing *State v. Guthrie,*

194 W.Va. 657, 684, 461 S.E.2d 163, 190 (1995)). "A judgment of conviction will not be reversed because of improper remarks made by a prosecuting attorney to a jury which do not clearly prejudice the accused or result in manifest injustice." Syl. pt. 5, *State v. Ocheltree,* 170 W.Va. 68, 289 S.E.2d 742 (1982). *Accord* Syl. pt. 5, *State v. Sugg,* 193 W.Va. 388, 456 S.E.2d 469 (1995). With these principles in mind, we now turn to the merits of this appeal.

### III.

### DISCUSSION

#### A. *Preserved Errors*

As we outlined previously, Mr. Walker assigns two errors involving his post-*Miranda* silence. Before addressing the merits of his contentions, however, this Court must first address the State's argument that Mr. Walker's assignments of error were not properly preserved for appellate review. The State asserts that this Court should not review the issues raised by Mr. Walker because he failed to timely object during cross examination, and he also failed to object during the State's closing argument. The State argues, with respect to its cross examination of Mr. Walker, that "it was incumbent upon [Walker] to object at trial before the testimony was uttered or to object contemporaneously with the testimony, move to have it stricken, and request a curative instruction." *Marple,* 197 W.Va. at 51 n. 11, 475 S.E.2d at 51 n. 11. We have held that "[i]f either the prosecutor or defense counsel believes the other has made improper remarks to the jury, a timely objection should be made coupled with a request to the court to instruct the jury to disregard the remarks." Syl. pt. 5, in part, *State v. Grubbs,* 178 W.Va. 811, 364 S.E.2d 824 (1987). In contrast, Mr. Walker contends that he properly preserved both issues for appeal. Alternatively, Mr. Walker asserts this Court should analyze both issues by applying the plain error doctrine.

■ **1. Preservation of the cross-examination issue.** Mr. Walker concedes that he did not make a contemporaneous objection to the prosecutor's cross examination of his post-*Miranda* silence. However, subsequent

to the cross examination, Mr. Walker motioned the trial court for a mistrial resulting therefrom. The trial court denied the motion stating that the cross examination was proper because Mr. Walker did not unequivocally invoke his *Miranda* rights.

We believe that Mr. Walker properly preserved for appellate review the issue of the State's cross examination on his post-*Miranda* silence. In fact, one of the justifications behind the requirement of contemporaneous objections is to give the trial court an opportunity to rule on an objection, before it is brought to this Court on appeal. *See Loar v. Massey,* 164 W.Va. 155, 159–60, 261 S.E.2d 83, 86–87 (1979) (" '[I]t has always been necessary for a party to object or except in some manner to the ruling of a trial court, in order to give said court an opportunity to rule on such objection before this Court will consider such matter on appeal.' " (quoting *Konchesky v. S.J. Groves & Sons Co., Inc.,* 148 W.Va. 411, 414, 135 S.E.2d 299, 302 (1964))). Obviously, Mr. Walker did not make a contemporaneous objection to the cross examination on his post-*Miranda* silence. However, Mr. Walker did present the matter to the trial court and obtained a definitive ruling by that court. Therefore, we find Mr. Walker's asserted error regarding the State's cross examination on the issue of his post-*Miranda* silence was properly preserved for review by this Court.

■ **2. Preservation of the closing argument issue.** Mr. Walker next concedes that he made no objection to the State's comments about his post-*Miranda* silence during closing arguments. However, Mr. Walker claims that because the trial court had previously ruled that the State could cross examine him on his post-*Miranda* silence, no further objection was necessary to preserve the matter for appellate review. In contrast, the State argues that Mr. Walker was obligated to make such an objection so that the trial court would have an opportunity to reconsider its earlier ruling.

Neither Mr. Walker nor the State cite to any case law, rendered by this Court or any other jurisdiction, addressing this precise issue. But, our recent ruling in *Lacy v. CSX*

*Transp. Inc.*, 205 W.Va. 630, 520 S.E.2d 418 (1999), provides some guidance. In *Lacy*, we were asked to determine whether a party was required to make an objection to remarks made during closing argument when the trial court had previously ruled by motion *in limine* that such remarks were permissible. The issue was resolved in Syllabus point 3 of *Lacy* as follows:

To preserve error with respect to closing arguments by an opponent, a party need not contemporaneously object where the party previously objected to the trial court's *in limine* ruling permitting such argument, and the argument pursued by the opponent reasonably falls within the scope afforded by the court's ruling.

*See also* Syl. pt. 1, *Wimer v. Hinkle*, 180 W.Va. 660, 379 S.E.2d 383 (1989) ("An objection to an adverse ruling on a motion in limine to bar evidence at trial will preserve the point, even though no objection was made at the time the evidence was offered, unless there has been a significant change in the basis for admitting the evidence."); Syl. pt. 2, *State v. Garrett*, 195 W.Va. 630, 466 S.E.2d 481 (1995) (same); Syl. pt. 6, *Bennett v. 3 C Coal Co.*, 180 W.Va. 665, 379 S.E.2d 388 (1989) (same).

Consistent with *Lacy*, to preserve error with respect to objections to closing argument by the State, a defendant need not contemporaneously object when the defendant has previously made an objection concerning the substance of the argument and obtained a ruling on the objection by the trial court.[1] Therefore, we conclude that the question of whether the State's closing argument improperly addressed Mr. Walker's post-*Miranda* silence was preserved for appeal. Having concluded that both of the errors raised by Mr. Walker were, in fact, properly preserved for appeal, we proceed to a discussion of the relevant issues.

## B. Cross Examination And Closing Argument

■ Mr. Walker argues that he is entitled to a new trial because the prosecutor cross examined him on his post-*Miranda* silence and commented about it to the jury. In adopting a rule of law announced by the United States Supreme Court in *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), this Court held in Syllabus point 1 of *State v. Boyd*, 160 W.Va. 234, 233 S.E.2d 710 (1977):

Under the Due Process Clause of the West Virginia Constitution, Article III, Section 10, and the presumption of innocence embodied therein, and Article III, Section 5, relating to the right against self-incrimination, it is reversible error for the prosecutor to cross-examine a defendant in regard to his pre-trial silence or to comment on the same to the jury.

*Accord* Syl. pt. 1, *State v. Oxier*, 175 W.Va. 760, 338 S.E.2d 360 (1985).[2] We further explained in *Boyd* the rational behind the *Doyle* decision as follows:

The holding of *Doyle* was based on two grounds. First, because it is constitutionally mandated that a person be advised immediately upon being taken into custody that he has the right to remain silent, the warning itself can create the act of silence. It would, therefore, be unfair to permit the State to obtain an advantage by being able to utilize the silence to impeach the defendant.

The second reason is that one of the purposes of a *Miranda* warning is to assure the defendant that if he asserts his privilege to remain silent no harmful consequences will flow from such assertion. Therefore, it would be wrong to permit the

---

1. Our decision is supported by West Virginia Trial Court Rule 23.04(b), which discourages objections by counsel during closing arguments: "Counsel shall not be interrupted in argument by opposing counsel, except as may be necessary to bring to the court's attention objection to any statement to the jury made by opposing counsel and to obtain a ruling on such objection."

2. We point out that the protections afforded a defendant for post-*Miranda* silence are generally not available for pre-arrest silence. This Court noted approvingly in *Oxier*, 175 W.Va. at 761 n. 1, 338 S.E.2d at 361 n. 1, language from the decision in *Jenkins v. Anderson*, 447 U.S. 231, 240, 100 S.Ct. 2124, 2130, 65 L.Ed.2d 86, 96 (1980), that "impeachment by use of prearrest silence does not violate the Fourteenth Amendment."

State to attack the defendant over his pre-trial silence.

*Boyd,* 160 W.Va. at 239, 233 S.E.2d at 715. Having set forth the general rule and its rationale, we now apply it to each of the errors herein raised.

■ **1. The cross examination of Mr. Walker on his post-*Miranda* silence.** The evidence is clear that the State cross examined Mr. Walker regarding his post-*Miranda* silence during Detective Westfall's attempted questioning.[3] At trial, the following exchange between the State and Mr. Walker occurred:

Q. Then, of course, you were at the hospital and Detective Westfall, who was investigating the shooting, came to see you, didn't he?

A. Yes, him and Tommy Ransom.

Q. And you didn't tell him a day afterwards that Mr. Belcher had pulled a knife on you, did you?

A. It was two days. No, I couldn't talk to him.

. . . .

Q. You recall Detective Westfall testifying that you told him that this was all an accident, don't you?

A. Right.

Q. You didn't tell him that Harold Belcher threatened to gut you like a hog, did you?

A. No.

Q. You didn't show Detective Westfall the cut, did you?

A. No, I didn't. I meant to do that for a reason.

■ The State argues that the foregoing cross examination of Mr. Walker was proper as it involved prior inconsistent statements.[4] This Court has ruled that "the State may impeach a defendant on pre-trial statements inconsistent with his trial testimony." *Boyd,* 160 W.Va. at 241, 233 S.E.2d at 716. "[I]t is not an unfair use of silence to cross-examine a criminal defendant concerning prior inconsistent statements made after receiving *Miranda* warnings." Syl. pt. 6, in part, *Acord v. Hedrick,* 176 W.Va. 154, 342 S.E.2d 120 (1986).

■ Mr. Walker argues that his statements to Detective Westfall were not inconsistent with his trial testimony. Therefore, it was improper for the state to question him about his post-*Miranda* silence. The statements made by Mr. Walker to Detective Westfall were: "I'm sorry I shot the old man. It was an accident." The state argues that these statements are inconsistent with Mr. Walker's testimony at trial that he shot Mr. Belcher initially in self-defense. In Syllabus point 2 of *State v. Blake,* 197 W.Va. 700, 478 S.E.2d 550 (1996), we observed that "[g]enerally, a witness who testifies to certain matters cannot be impeached by showing his or her failure on a prior occasion to disclose a material fact unless the disclosure was omitted under circumstances rendering it incumbent or natural for the witness to state it."

Mr. Walker testified at trial that the initial shooting occurred after Mr. Belcher cut him and verbally threatened him. It was further contended by Mr. Walker at trial that the second shot occurred accidentally when he was attacked by other patrons at the nightclub. Such testimony is not inconsistent with the unsolicited statements made by Mr. Walker. It was not "incumbent or natural" for Mr. Walker to inform Detective Westfall of matters surrounding the shooting as Mr. Walker had invoked his *Miranda* rights. The unsolicited statements made by Mr. Walker as Detective Westfall left the room

---

3. Mr. Walker was arrested by officer Errol Randle of the Charleston Police. Mr. Walker made statements of denial to Officer Randle during the arrest. The State's brief makes a lengthy argument concerning Officer Randle's trial testimony. However, Mr. Walker does not assign any error to matters pertaining to Officer Randle.

4. The State also argues that Detective Westfall properly questioned Mr. Walker because Mr. Walker did not invoke his *Miranda* rights. We find no merit to this argument. It is clear from the record that Detective Westfall terminated all questioning of Mr. Walker once Mr. Walker indicated he did not wish to be questioned. The statements made to Detective Westfall by Mr. Walker occurred as Detective Westfall was leaving the room. Detective Westfall did not say anything to Mr. Walker after he made the unsolicited statements.

did not nullify his initial assertion of his *Miranda* rights. Therefore, it was reversible error for the state to cross examine Mr. Walker on his post-*Miranda* silence.

■ **2. Closing argument by the state regarding Mr. Walker's post-*Miranda* silence.** The last argument made by Mr. Walker is that the state made improper remarks about his post-Miranda silence during closing arguments. In Syllabus point 6 of *State v. Sugg,* 193 W.Va. 388, 456 S.E.2d 469 (1995), we outlined the factors that are to be considered in analyzing improper remarks by a prosecutor:

> Four factors are taken into account in determining whether improper prosecutorial comment is so damaging as to require reversal: (1) the degree to which the prosecutor's remarks have a tendency to mislead the jury and to prejudice the accused; (2) whether the remarks were isolated or extensive; (3) absent the remarks, the strength of competent proof introduced to establish the guilt of the accused; and (4) whether the comments were deliberately placed before the jury to divert attention to extraneous matters.[5]

During the States closing argument, counsel made repeated remarks concerning Mr. Walker's post-*Miranda* silence. For example, the State made the following argument:

> He never said anything to the police officers that he was cut by Harold Belcher. He never said anything to the police officers that Harold Belcher had a knife to his groin. He never said anything to the police officers that Harold Belcher threatened to gut him like a hog. He never said that stuff because it didn't happen[ ].
>
> . . . Why wouldn't he tell—why wouldn't he tell the police officers that Harold Belcher did these things? It doesn't make sense. If it happened, he would have told them. He would have said that to the police officers.

In view of the *Sugg* factors, we have little difficulty in finding reversible error in the State's closing argument remarks concerning

Mr. Walker's post-*Miranda* silence. Not only was the State's attack on Mr. Walker's post-*Miranda* silence improper, the attack was highly prejudicial. Mr. Walker's defense was self-defense. The state told the jury, in essence, that the shooting was not in self-defense. Had it been self-defense, according to the State, Mr. Walker would have so advised the police. To permit the State to do what occurred in this case, would effectively make *Miranda* warnings meaningless.

### IV.

### CONCLUSION

Based upon the foregoing, we reverse the decision of the Circuit Court of Kanawha County and remand this case for a new trial.

Reversed and Remanded.

MAYNARD, Chief Justice, dissenting:

(Filed June 28, 2000)

I dissent because I believe that the appellant did not preserve his cross examination and closing argument issues for appeal.

The majority's finding that the prosecution made improper use of the appellant's post-*Miranda* silence appears to be correct. However, our law is settled that before this Court will consider such error, it must have been raised below in a timely manner so that the trial court has an opportunity to correct it. This was not done here.

The majority states that the appellant did not make a contemporaneous objection to the prosecutor's cross examination but motioned for a mistrial "subsequent to the cross examination." However, the majority does not disclose just how subsequent to the cross examination the motion for a mistrial occurred. After the complained of cross examination of the appellant, there was redirect examination and then recross examination. At that point there was a discussion at the bench in which two exhibits were discussed. This discussion was followed by a recess. After the recess, appellant's witness, Betty Walker, testified. After Ms. Walker's testi-

---

5. We recently applied this test in *State v. Stephens,* 206 W.Va. 420, 525 S.E.2d 301 (1999). The State's brief incorrectly refers to these factors as the *Stephens* test. This test was developed by Justice Cleckley in *Sugg* and should therefore be referred to as the *Sugg* test.

mony, the jury was dismissed for the evening and a lengthy discussion concerning jury instructions occurred between the trial court and the parties. The trial court inquired whether there were "any loose ends or matters to take up[.]" At that point, the appellant said nothing about the allegedly improper cross examination.

After a three-day weekend, the trial reconvened and the defense called two more witnesses, Larry DeHus and Mel Curry. At the end of this testimony, the court recessed due to the unavailability of a witness, and another lengthy discussion was held concerning jury instructions. At the end of this discussion, the trial court asked whether there were "any other loose ends or matters I haven't ruled or passed upon." The appellant still said nothing about the cross-examination. After a recess for lunch, the appellant called his final witness, Dr. Echols Hansbarger. At the conclusion of this testimony, the defense rested and repeated its motion for acquittal initially made at the end of the State's evidence. Following the motion, the court asked whether there were any other motions. *Finally, at that point*, the appellant moved for a mistrial based on the State's cross-examination of the appellant, four days and four witnesses after the trial court and the jury heard the complained of testimony. The majority's conclusion that this alleged error was properly preserved for appeal is contrary to our jurisprudence.

Rule 103(a)(1) of the West Virginia Rules of Evidence states, in part, that "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and [i]n case the ruling is one admitting evidence, a *timely* objection or motion to strike appears of record[.]" (Emphasis added). This Court has explained that "[o]nce it is believed that evidence of a prejudicial nature has been introduced, to satisfy the requirements of Rule 103(a) an objection must be interposed *at the time the evidence has been offered and the trial court thus be given an opportunity to rule on the admissibility of the evidence.*" *Reed v. Wimmer*, 195 W.Va. 199, 204, fn. 4, 465 S.E.2d 199, 204, fn. 4 (1995) (emphasis added). Further, the Court has opined that

"[w]e disfavor the technique of not first making a timely objection to the error and instead waiting until a later time to move for a mistrial." *Pasquale v. Ohio Power Co.*, 187 W.Va. 292, 309, 418 S.E.2d 738, 755 (1992). When measured against this law, it is plain that the appellant failed to preserve his alleged cross examination error.

The majority says that one of the justifications behind the requirement of contemporaneous objections is to give the trial court an opportunity to rule on an objection before it is brought to this Court. By motioning for a mistrial, reasons the majority, the appellant gave the trial court such an opportunity. However, the timeliness requirement is also designed to give the trial court a chance to rule on the evidence *before* it is admitted so that the jury does not hear inadmissible evidence. Although this cannot always be done, the objection must soon follow the alleged error so that the trial court can take effective corrective measures if necessary. In the instant case, the appellant's dilatory conduct robbed the trial court of any effective means of correcting the alleged error. After a four-day period, it would have been futile and confusing for the trial court to instruct the jury to "disregard the cross-examination of the defendant you heard last week concerning his silence after Detective Westfall read him his *Miranda* rights."

Next, the majority finds that the alleged error involving the prosecution's use of post-*Miranda* silence during the State's closing argument was adequately preserved for appeal under syllabus point 3 of *Lacy v. CSX Transp. Inc.*, 205 W.Va. 630, 520 S.E.2d 418 (1999). The difficulty with this finding is that there was no motion *in limine* to exclude the defendant's silence, and there was no previous timely objection to the use of such evidence. Therefore, the Court also should have found that this issue was not preserved for appeal.

The immediate effect of the majority's decision is that the State now has to retry the appellant after he has already been convicted by a jury, based on substantial evidence, of voluntary manslaughter with the use of a firearm. My concern, however, is with the potential long term effects of the decision. I

fear that the Court has significantly weakened Rule 103 of the West Virginia Rules of Evidence by removing its timeliness requirement. The Court has also ignored our body of settled law that demands timely objections to alleged errors in the trial court. Accordingly, I dissent.

STARCHER, Justice, concurring:

(Filed July 20, 2000)

This *per curiam* opinion includes a footnote (note 2) that I think could be "dangerous in the wrong hands."

Let me illustrate my concern with two hypotheticals.

In both cases, A and B, the police find a person (the defendant) standing over a corpse with a smoking pistol.

In case A, the police arrest the defendant right after they get to the crime scene, but they take their time (a half an hour) at the scene before they put the defendant in a police car and transport him to jail.

In case B, the police are slower to decide to arrest the defendant, and only do so after a half an hour—and then they take him immediately to jail.

In both cases, the person repeatedly refuses to answer police questions at the crime scene about what happened and how the victim was shot. And later, in both cases, at his murder trial, the defendant "explains" for the first time that he was attacked by the person whom he shot.

The question is—in both case A and in case B—can the prosecutor make this argument to the jury: "Why didn't the defendant tell this 'I was attacked' story to the police at the crime scene? His silence at the crime scene shows that he is making this story up. Any innocent person would have explained what happened!"

Clearly, such an argument is impermissible in case A—because such an argument would be commenting on "post-arrest" silence. But what about case B, where the person was not "under arrest" when he was silent?

Why should commenting on the person's silence in the face of police questions be different—and thus "constitutionally permissible"—in case B? People generally have a constitutional right not to explain their actions to the police, whether or not they are "under arrest"—that's part of what makes America a (perhaps uniquely) "free country."

When the police read people their *Miranda* rights, the police are not *conferring* "the right to remain silent." The police are *informing* the person of a right that they *already* have—in my judgment, both pre- *and* post-arrest.

In both hypothetical cases, a prosecutorial argument that the person "didn't say anything to the police" would seemingly penalize the exercise of a constitutional right. So in both cases, such an argument by a prosecutor would seemingly be impermissible—at least in this hypothetical context.

Obviously, in real life this could be a complex issue. A footnote in a *per curiam* opinion does not settle the law. I think we may need to look at this issue more carefully if it comes before us in a subsequent case.

I otherwise concur in the majority opinion.