# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs)  No. 14-0806** (McDowell County 13-F-14)

**Eddie Coffey,**
**Defendant Below, Petitioner**

**FILED**

October 16, 2015

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Eddie Coffey, by counsel Dennie S. Morgan, appeals his convictions for the offenses of possession with intent to deliver a controlled substance and conspiracy to deliver a controlled substance. Respondent State of West Virginia, by counsel David A. Stackpole, filed a response.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In February of 2013, a grand jury indicted petitioner and his wife for multiple offenses regarding the sale of controlled substances.[1] Following a joint jury trial on July 25, 2013, petitioner was found guilty of two counts of possession with intent to deliver a schedule II substance, and one count of conspiracy.[2]

The State's evidence at trial showed that Hershel Lee Coleman sold one hundred Opana[3]

---

[1] The indictment charged petitioner and his wife individually in count one with possession with intent to deliver a schedule I controlled substance; in count two with possession with intent to deliver a schedule II controlled substance; in count three with possession with intent to deliver a schedule II controlled substance; in count four with possession with intent to deliver a schedule III controlled substance; in count five with possession with intent to deliver a schedule IV controlled substance, and in count six with conspiracy.

[2]  Petitioner was found not guilty of possession with intent to deliver a schedule I controlled substance; possession with intent to deliver a schedule III controlled substance; and possession with intent to deliver a schedule IV controlled substance.

[3] Opana is a trade name for oxymorphone,  a schedule II controlled substance pursuant to West Virginia Code § 60A-2-206(b)(1)(q).

1

pills to petitioner for forty dollars per pill on three different occasions. On the first two occasions, Steve Huffman acted as a go-between, because petitioner was distrustful and would not deal with people he did not know. The last time, Mr. Coleman testified that he sold the pills directly to petitioner, and that Mr. Huffman was present for the exchange. On the day after the third sale, petitioner was arrested.

Petitioner's arrest came after deputies received numerous anonymous tips that petitioner was observed at his residence as multiple vehicles were coming and going without staying long; and that petitioner was selling drugs at his residence. Based upon this information, a search warrant was obtained, and on October 14, 2011, the sheriff's department and Southern Regional Drug and Violent Crime Task Force executed the warrant.

Petitioner was at his residence when the warrant was executed. Officers conducted a search of petitioner, and found twenty-two Opana pills in petitioner's right jacket pocket in a silver metal pill bottle.[4] In petitioner's right front pocket, officers found a piece of aluminum foil with thirty 15 mg oxycodone pills, and a piece of aluminum foil containing one Opana pill. Deputy Shelton of the McDowell County Sheriff's Department testified that he was present when the items were discovered, that Deputy England turned them over to him, and that Deputy Shelton inventoried the items.[5] Officers also seized $7,000.00 in cash from petitioner's residence. At trial, petitioner did not object to testimony regarding the seizure of the currency, nor to the admission of the "Items Seized Report" which contained a list of the items found in petitioner's home.

Deputy Shelton testified that at all times he kept control of the evidence, transported the pills to the station, and sealed them in the evidence locker. Prior to taking the evidence to the West Virginia State Police Lab, Deputy Shelton realized that two of the pill bottles seized from petitioner's home contained pills with different markings. In order to get a proper count of the pills, Deputy Shelton opened one pill bottle at a time and grouped the pills by markings, counted them, and returned them to the bottle.

In his closing argument, petitioner argued that the drugs seized were for his personal use, and that he had a substance abuse problem. In response, the prosecutor twice made statements that petitioner was "not working" and pointed out the amount of money that was seized in an attempt to show that intent to distribute existed.[6] Petitioner did not object to these statements.

---

[4] There were two officers present at the time of the execution of the search warrant. Deputy England, who retrieved a number of the pills found in petitioner's home, did not testify at trial as he was no longer an employee of the McDowell County's Sheriff's Department at the time of trial.

[5] In addition to the pills seized from petitioner's person, the officers also seized additional pills, cash, guns, and several all–terrain vehicles from petitioner's residence.

[6] The statements, in context, are as follows:

2

The events described above are relevant to petitioner's assignments of error at issue in this appeal. Petitioner appeals his re-sentencing order,[7] and the order of the circuit court that denied his motion to set aside verdict, judgment of acquittal, and his motion for a new trial.

Petitioner raises three assignments of error on appeal.

> "In reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a de novo review." Syllabus point 3, *State v. Vance,* 207 W.Va. 640, 535 S.E.2d 484 (2000).

Syl. Pt. 2, *State v. White*, 228 W.Va. 530, 722 S.E.2d 566 (2011). We note that "'[a] reviewing court should not reverse a criminal case on the facts which have been passed upon by the jury, unless the court can say that there is reasonable doubt of guilt and that the verdict must have been the result of misapprehension, or passion and prejudice.' Syllabus point 3, *State v. Sprigg*, 103 W.Va. 404, 137 S.E. 746 (1927)." Syl. Pt.1, *State v. Easton*, 203 W.Va. 631, 510 S.E.2d 465 (1998). Further,

---

> He's got $7,000, roughly, in cash. Okay? He's not working. He's got this property – how many four-wheelers? Three? He paid $5,000, uncontradicted, to Junior Coleman a few days before. 4 and 7, that's $11,000. Who has that much money just laying around the house that's not working? Where did those other Opana go? He sold them. That's the only reasonable inference that can be made from that. He didn't eat 78 Opana over a period of at most five days – at least within 24 hours, really less than 24 hours if they were there the evening before. Where did those 78 Opana go?
>
> . . .
>
> He's not working. He's got close to $7,000. He pays $4,000 the day or two before. That's $11,000. I mean it's not reasonable to think that he's got all this money and all these pills that he didn't have a prescription for and he's not selling them. I mean, let's just- its not reasonable. I mean, that's way too many pills, way too much money for him just to have a drug problem. If he just had a really bad drug problem, one wouldn't have all that money because he'd be spending it all buying pills of some sort. And the reason he had the money is because he was making a profit selling drugs.

[7] Petitioner was convicted on July 26, 2013. The original order denying petitioner's motions was entered January 31, 2014, and petitioner was sentenced April 28, 2014. On June 24, 2014, the circuit court entered an order re-sentencing defendant in order to allow the filing of this appeal.

3

"[a]lthough the ruling of a trial court in granting or denying a motion for a new trial is entitled to great respect and weight, the trial court's ruling will be reversed on appeal when it is clear that the trial court has acted under some misapprehension of the law or the evidence."

Syl. Pt. 1, in part, *White* (internal citations omitted).

Petitioner first claims that the trial court erred by not granting him a new trial once the evidence showed that the State of West Virginia wrongfully withheld exculpatory material.[8] Petitioner argues that pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), and *State v. Hatfield*, 169 W.Va. 191, 286 S.E.2d 402 (1982), the State was required to turn over exculpatory evidence, but did not. The circuit court found that the subject evidence was not exculpatory or impeachment evidence, and rejected petitioner's motion for a new trial on this basis.

Petitioner has failed to establish that the subject evidence was exculpatory and that the conduct of the State violated petitioner's constitutional due process rights. "A claim of a violation of *Brady* and *Hatfield* presents mixed questions of law and fact. Consequently, the 'circuit court's factual findings should be reviewed under a clearly erroneous standard and . . . questions of law are subject to *de novo* review.'" *State v. Youngblood*, 221 W.Va. 20, 26, 650 S.E.2d 119, 125 (2007) (internal citation omitted). Further,

> [t]here are three components of a constitutional due process violation under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and *State v. Hatfield*, 169 W.Va. 191, 286 S.E.2d 402 (1982): (1) the evidence at issue must be favorable to the defendant as exculpatory or impeachment evidence; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) the evidence must have been material, i.e., it must have prejudiced the defense at trial.

Syl. Pt. 2, *Youngblood*. *Black's Law Dictionary* defines exculpatory evidence as "[e]vidence tending to establish a criminal defendant's innocence." 675 (10th ed. 2014). Impeachment evidence is "[e]vidence used to undermine a witness's credibility." *Id*. at 676.

The evidence of which petitioner complains involves a statement that Ms. Cassell allegedly gave to law enforcement, and testimony from law enforcement officers of several unsuccessful attempts to buy, purchase, or arrange for the purchase of controlled substances from petitioner. Petitioner fails to show how this evidence might tend to establish his innocence of the offenses for which he was convicted. Petitioner was indicted and convicted based upon evidence that, on three occasions, petitioner purchased one hundred Opana pills in exchange for forty dollars per pill. In addition, evidence was introduced at trial that petitioner was notoriously

---

[8] Petitioner cites two alleged pieces of exculpatory evidence which were not turned over by the State prior to trial: (1) a written statement given by Lynn Cassell to a law enforcement officer around October of 2011, in which she stated that she attempted to purchase drugs from petitioner seven times in one day and was refused; and (2) evidence from law enforcement officers regarding several unsuccessful attempts to buy, purchase, or arrange for the purchase of controlled substances from petitioner.

paranoid, and would often turn others away. Therefore, we find petitioner has failed to satisfy the standards set forth in *Youngblood*, as petitioner has not shown that any evidence was suppressed by the State, willfully or inadvertently, nor that any such evidence was material, particularly in light of the fact that petitioner had the opportunity to cross-examine Ms. Cassell, and the investigating officers regarding this evidence. Therefore, we find that the circuit court did not err in denying petitioner's motion for a new trial on this ground.

Petitioner next alleges that the circuit court erred in denying petitioner a new trial because the State's closing argument was improper and unduly prejudicial. At trial, the State argued that, although petitioner was unemployed, he was found in possession of $7,000.00 cash, several guns, and all-terrain vehicles. The State argued that petitioner was financing his lifestyle by selling controlled substances. The circuit court found that, while there was no direct evidence regarding petitioner's employment status, the jury was free to make any reasonable inferences from the evidence introduced at trial. The circuit court found further that petitioner was home on a Friday afternoon when the search warrant was executed, and that there was testimony that petitioner "always seemed home," regardless of the time of the day or day of the week. The circuit court concluded that it was reasonable to conclude that petitioner was home nearly all the time, and was unemployed.

> "Four factors are taken into account in determining whether improper prosecutorial comment is so damaging as to require reversal: (1) the degree to which the prosecutor's remarks have a tendency to mislead the jury and to prejudice the accused; (2) whether the remarks were isolated or extensive; (3) absent the remarks, the strength of competent proof introduced to establish the guilt of the accused; and (4) whether the comments were deliberately placed before the jury to divert attention to extraneous matters." Syllabus point 6, *State v. Sugg,* 193 W.Va. 388, 456 S.E.2d 469 (1995).

Syl. Pt. 3, *State v. Walker*, 207 W.Va. 415, 533 S.E.2d 48 (2000). Upon our review of the record, we find that petitioner is not entitled to have his conviction set aside because the prosecutor's remarks did not result in clear prejudice or manifest injustice.

With regard to the first *Sugg* factor, we disagree with petitioner's argument that the prosecutor's remarks had a strong tendency to mislead the jury and to prejudice petitioner. The circuit court found, and we agree, that the remarks by the prosecutor amount to a reasonable inference based upon testimony introduced at trial. Importantly, the jury was instructed by the circuit court to disregard any statements not supported by the evidence.

As to the second *Sugg* element, the statements in question were isolated, in that they were little more than a small portion of the State's rebuttal in closing argument. As to the third *Sugg* element, as noted above, the jury had ample evidence with which to convict petitioner. The state presented direct testimony that on three occasions, Mr. Coleman received $4000.00 from petitioner in exchange for one hundred Opana pills. Officers testified that they received several anonymous tips that multiple vehicles were coming and going from petitioner's residence without staying for long periods of time. Upon execution of a search warrant, officers found twenty-two Opana pills in petitioner's right jacket pocket, and another pill bottle with thirty oxycodone 15 mg pills. Additional pills were found in petitioner's home, and on his person. It is

clear, absent the prosecutor's remarks, the evidence against petitioner was sufficient to support his conviction.

In addition, we find that the remarks were not deliberately meant to divert the jury's attentions to extraneous matters. There is no evidence that the State intended to assert anything other than an inference based upon the evidence presented at trial that petitioner was at his residence day and night, regardless of the day of the week, which suggests that petitioner was unemployed. Finally, we note that petitioner did not object to the statements at the time they were made. "'Errors assigned for the first time on appeal will not be regarded in any matter of which the trial court had jurisdiction or which might have been remedied in the trial court had objection been raised there.' Syllabus point 17, *State v. Thomas*, 157 W.Va. 640, 203 S.E.2d 445 (1974)." Syl. Pt. 1, *State v. Berry*, 227 W.Va. 221, 707 S.E.2d 831 (2011). Consequently, we find that the prosecutor's remarks do not justify reversal of petitioner's conviction because they did not prejudice petitioner or result in any manifest injustice.

Finally, petitioner asserts that the circuit court allowed the admission of evidence that was not properly authenticated, and that petitioner was unfairly prejudiced by the admission of this improper evidence. Petitioner complains of the following evidence that was admitted at trial: twenty-two 40 mg Opana pills seized from petitioner's right jacket pocket; thirty 15 mg oxycodone tablets seized from petitioner's right front pants pocket; and currency in the amount of $7,087.00 seized from petitioner's home all of which were seized by Deputy J.R. England. At the time of trial, Deputy England was no longer employed with the McDowell County Sheriff's Department and did not testify. Petitioner argues that because Deputy England did not testify to his seizure of the items, the items could not be properly authenticated, and so were improperly admitted by the circuit court.

> "Before a physical object connected with a crime may properly be admitted into evidence, it must be shown that the object is in substantially the same condition as when the crime was committed. Factors to be considered in making this determination are: (1) the nature of the article, (2) the circumstances surrounding its preservation and custody, and (3) the likelihood of intermeddlers tampering with it."

Syl. Pt. 1, *State v. Davis*, 164 W.Va. 783, 266 S.E.2d 909 (1980). Further, "[t]he preliminary issue of whether a sufficient chain of custody has been shown to permit the admission of physical evidence is for the trial court to resolve. Absent abuse of discretion, that decision will not be disturbed on appeal." Syl. Pt. 2, *id.*

Petitioner fails to demonstrate that the circuit court abused its discretion by permitting the subject evidence. First, the record reflects that the currency was never admitted into evidence, and that the only evidence offered regarding the currency seized was in the form of testimony by the investigating officers. Chain of custody concerns the condition of physical objects which one seeks to admit into evidence. Petitioner cannot complain of the physical condition of evidence which was not admitted at trial. Further, petitioner did not object to the testimony regarding the seized currency at trial.

With respect to the pills seized from petitioner, petitioner claims that Deputy Shelton

6

testified that he sorted all of the pills found petitioner's home in order to determine their type for storage. Upon our review of the record, it appears that the circuit court excluded the pills sorted by Deputy Shelton. The evidence of which petitioner complains, was not sorted by Deputy Shelton, but was taken from petitioner by Deputy England, and sealed and stored by Deputy Shelton, without his interference.

> To allow introduction of physical evidence into a criminal trial, it is not necessary that every moment from the time evidence comes into the possession of a law enforcement agency until it is introduced at trial be accounted for by every person who could conceivably come in contact with the evidence during that period, nor is it necessary that every possibility of tampering be eliminated; it is only necessary that the trial judge, in his discretion, be satisfied that the evidence presented is genuine and, in reasonable probability, has not been tampered with.

*Id.*, 164 W.Va. at 786-87, 266 S.E.2d at 911-12 (internal citation omitted). It is evident from the record that the circuit court thoughtfully considered the chain of custody of the evidence in this matter, and selectively excluded evidence that it believed was improperly authenticated. Further, the record reflects that Deputy Shelton was in the presence of Deputy England when the subject evidence was seized, and that the subject evidence was sealed and stored until it was tested by the West Virginia State Police Lab, after which time it was properly stored until trial. Accordingly, we find the circuit court did not abuse its discretion in admitting this evidence, and find petitioner's argument to be without merit.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** October 16, 2015

**CONCURRED IN BY:**

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Menis E. Ketchum
Justice Allen H. Loughry II