No. 19-0326 – *State v. Costello*

FILED
**April 2, 2021**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

WOOTON, J., concurring, in part, and dissenting, in part:

While I concur with the majority's general analysis of the recidivist issues,[1] I respectfully dissent to the majority's refusal to address the obvious prejudice to petitioner resulting from the State's use of an undisclosed confession in obtaining the third and recidivist-triggering offense. Hiding behind claims that this error was somehow unpreserved below—and unwilling to undertake a plain error analysis notwithstanding our clear authority to do so—the majority's opinion leaves the somewhat breathtaking conclusion that the State may use an undisclosed confession against a defendant, as long as the government agent to whom it was made withholds its existence from the prosecutor. In so doing, the majority implicitly sanctions and encourages non-disclosure of confessions and elevates technicalities over the fundamental rights of petitioner.

Petitioner was charged with DUI causing serious bodily injury upon allegations that he used heroin while driving, causing him to crash and seriously injure a young boy. At trial, petitioner's defense was that the crash was purely accidental and that he ingested heroin *after* the accident to dispose of it. Since petitioner was on probation at

---

[1] I concur in the majority's analysis of the sufficiency of the recidivist evidence introduced and its conclusion that the character of the underlying offenses is an issue of law. I likewise concur in its conclusion that the nature of the underlying offenses satisfies the requirements of *State v. Hoyle*, 242 W. Va. 599, 836 S.E.2d 817 (2019). However, given my position that petitioner's conviction of the triggering third offense was erroneous, I would likewise set aside the recidivist conviction and remand for a new trial on the final offense.

1

the time, he met with his probation officer after the accident. In its required pretrial disclosures, the State disclosed documents generated during the meeting including a document wherein petitioner admitted "us[ing] drugs to wit: Heroin" and "manifest[ing] behavior that threatened the safety of yourself or others, or that could result in your imprisonment; which caused you to be charged with DUI (narcotics) with felony serious bodily harm." Petitioner moved to suppress these written admissions and the trial court agreed that the second statement—admitting to behavior that "threatened [] safety" or "could result in [] imprisonment"—was inadmissible because it was phrased disjunctively and therefore ran afoul of West Virginia Rule of Evidence 403.

At no time did the State disclose the existence of any *oral* confession to petitioner's probation officer. In fact, the State represented that despite meeting with the probation officer on four separate occasions to discuss his testimony, he never mentioned a confession. However, at trial, the probation officer—in an admitted surprise to the State, defense counsel, and the court—testified that petitioner confessed to using heroin *prior* to the accident:

> Said he was driving from work. I guess the heroin was called elephant or something to that effect. He was driving from work. He said he snorted the heroin. He remembers crossing the bridge. After he crossed the bridge, he said he blacked out. When he came to, the vehicle had turned over and that's when the accident happened.[2]

---

[2] The probation officer reiterated and confirmed the critical aspect of this confession—that petitioner used heroin *before* the accident—on cross and again on redirect:
(continued . . .)

2

(footnote added).  At the close of the probation officer's testimony, petitioner's counsel requested a sidebar and objected specifically to this testimony, moving for a mistrial as a result.  The court stated that "I was not aware at the pretrial conference that this witness would make this statement as admission of what the defendant said[.]"  Regardless, the court denied the motion for mistrial because it found that the confession did not fall within the ambit of its order excluding the written admission.  Petitioner's counsel then renewed his motion for a mistrial at the close of the State's case, again, based on this surprise alleged confession.[3]  Following the verdict, petitioner's counsel yet again orally moved for a new trial on the basis of this undisclosed confession.

Petitioner then filed a timely motion for a new trial where he again argued that the undisclosed confession fell within the scope of the written admission that was excluded by the court and otherwise surprised and prejudiced petitioner's defense.  The State responded that the confession testified to by the probation officer was offered much

---

Q.    And he admitted to you that he snorted heroin before he
        crossed the bridge into West Virginia?

A.    And blacked out afterwards, correct.

[3] During both of these oral motions, counsel made clear that he objected to the admission of this statement but attempted to bootstrap the statement to the previously excluded written admission from the probation documents.  Counsel later explained that he framed his initial objection in this manner was because he believed the court's ruling to include "any oral statements which would have been associated with that admission." However, the court disagreed that the statement fell within the contemplation of its order excluding the written statement, particularly given that no one knew about the confession at the time of the court's order.

"[t]o the State's surprise" and that it could "only speculate why [the probation officer] did not share this information." The State nevertheless maintained that the confession was clearly voluntary and was not excluded by the court's prior order regarding the written admission.

Importantly, during the hearing on petitioner's motion for a new trial, the parties and the court unmistakably focused exclusively on the State's failure to disclose this confession, the State's culpability in that failure, and the effect of petitioner's attempt to explain that confession during his case-in-chief. Petitioner's counsel argued "if the state didn't know about it, then that is a negligent *failure to disclose discovery* by the state because they should have interviewed their witness and had enough information to know what he was going to testify to." (Emphasis added). Counsel explained that his client was "depriv[ed] [] of material information" and explored the devastating impact of a "professional, you know, licensed, bonded state actor saying that they had received a full confession" on petitioner's defense. Counsel maintained that the probation officer's failure to advise the State of the alleged confession only to offer it unsolicited at trial was "misconduct by a state actor . . . . who intentionally suppressed a highly material statement" and that "[j]ust because [the prosecutor wasn't] . . . suppressing the information doesn't mean the state didn't suppress the information." Counsel stated that "[e]verything might

4

have changed regarding trial strategy if I had known that . . . we had an actual confession given to a state actor. That changes everything, Your Honor."[4]

In response, the prosecutor conceded that the State "is required to disclose to the defendant a summary of any oral statement made to an agent of the state and the state is supposed to act with due diligence to try to find that." Although the State did not cite the Rule to the trial court, this concession is a clear reference to Rule 16 of the West Virginia Rules of Criminal Procedure containing this disclosure requirement.[5] The

---

[4] Petitioner's counsel also argued more specifically that the failure to disclose stripped petitioner of an opportunity to seek a voluntariness hearing: "The State must prove, at least by a preponderance of the evidence, that confessions or statements of an accused which amount to admissions of part or all of an offense were voluntary before such may be admitted into the evidence of a criminal case." Syl. Pt. 5, *State v. Starr*, 158 W. Va. 905, 216 S.E.2d 242 (1975). He further attempted to disabuse the court of the notion that the testimony on record was sufficient to establish voluntariness because he was denied an opportunity to inquire of his client and prepare to examine the probation officer in that regard. The court appeared to consider having a *post hoc* voluntariness hearing, but simply denied the motion for new trial instead.

[5] Rule 16 of the West Virginia Rules of Criminal Procedure provides, in pertinent part:

> (a) Disclosure of Evidence by the State.
>     (1) Information Subject to Disclosure.
>         (A) Statement of Defendant. Upon request of a defendant the state must disclose to the defendant and make available for inspection, copying, or photographing: any relevant written or recorded statements made by the defendant, or copies thereof, within the possession, custody or control of the state, the existence of which is known, or by the exercise of due diligence may become known, to the attorney for the state; that portion of any written record containing the substance of any relevant oral statement made by the

(continued . . .)

5

prosecutor then recounted that, despite meeting with him four times, the probation officer was "shocking[ly]" obstructive on certain points and was "directly asked . . . 'what did he tell you about the accident?'" and that the officer "*said he either didn't know or couldn't remember*[.]" (Emphasis added). The prosecutor further admitted that "I do recall even [petitioner's counsel] asking [] one time 'are there any—is he going to say anything beyond the documents?' *And I told him no.* I said 'he just doesn't have a memory.'" (Emphasis added).

The trial court conceded the "odd twist" caused by the fact that the State was equally surprised by the alleged confession testimony and remarked that "I would have expected [the probation officer] to have recorded the fact that the statement was made and he didn't." The court noted that "given that the state didn't disclose it, the defendant is now in a bind[.]" Nonetheless, the trial court denied the motion for a new trial—without even addressing the disclosure obligations conceded by the State under Rule 16 or how the State's ignorance of the confession impacted the protections afforded petitioner under the

---

defendant, whether before or after arrest in response to interrogation by any person then known to the defendant to be an agent of the state; and recorded testimony of the defendant before a grand jury which relates to the offense charged. *The state must also disclose to the defendant the substance of any other relevant oral statement made by the defendant whether before or after arrest in response to interrogation by any person then known by the defendant to be an agent of the state if the state intends to use that statement at trial.*

(emphasis added).

Rule. Instead, the trial court focused on its belief that petitioner should have advised his counsel of the confession, allowing him to preemptively move for suppression, and his subsequent acknowledgment of the confession during his own case-in-chief, when he testified that he confessed to curry favor with the probation officer.[6]

Despite the record below being replete with discussion of the precise testimony and issue presented—petitioner's entitlement to notice of the State's use of an oral statement made to a state actor—the majority evades the issue entirely by finding that petitioner failed to adequately preserve the error. However, it is undisputed that petitioner's counsel 1) immediately moved for a mistrial on the basis of this undisclosed confession at the close of the probation officer's testimony; 2) renewed the motion for mistrial at the close of the State's case; and 3) orally and in writing moved for a new trial on that basis, thereafter engaging in a lengthy hearing wherein the court and parties argued specifically about the State's disclosure obligations and the resultant prejudice to petitioner. The majority nit-picks these patent attempts to raise and preserve this very specific issue, by suggesting counsel should have contemporaneously objected to and moved to strike the testimony and that counsel's stated opposition was not as precise as it should have been—all resulting in a failure to preserve the error.

---

[6] Petitioner testified that the probation officer told him that his probation violations would be handled more leniently if he simply confessed. The officer denied making any such statement.

However, this Court has found it unnecessary to parse the wording and timing of objections and motions to strike when a party is faced with inadmissible testimony in order to find that the issue was properly preserved for appeal. In *State v. Walker*, 207 W. Va. 415, 418, 533 S.E.2d 48, 51 (2000), the Court expressly rejected the majority's position herein, finding that where there was no contemporaneous objection to inadmissible testimony, a subsequent motion for mistrial was sufficient to obtain a ruling which was reviewable on appeal. The Court explained that "one of the justifications behind the requirement of contemporaneous objections is to give the trial court an opportunity to rule on an objection, before it is brought to this Court on appeal." *Id*. at 418, 533 S.E.2d at 51. The Court recognized that petitioner "did not make a contemporaneous objection to the prosecutor's cross examination of his post-*Miranda* silence. However, subsequent to the cross examination, Mr. Walker motioned [sic] the trial court for a mistrial resulting therefrom." *Id*. Because his motion for mistrial allowed him to obtain a "definitive ruling" on the issue, this Court found that it was preserved for appeal. *Id*. That is precisely what occurred in this case.

Moreover, the majority refuses to address the surprise introduction of a confession to an agent of the State through application of the plain error doctrine. Indeed, the majority ignores our clear legal precedent that the Court does not simply have the *ability*

8

to notice plain error, it has an *obligation* to do so where the doctrine is satisfied..[7] "To trigger application of the 'plain error' doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings." Syl. Pt. 7, *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995*); see also* W. Va. R. Crim. P. 52. ("Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."). Plain error must be addressed where "the lower court skewed the fundamental fairness or basic integrity of the proceedings in some major respect . . . . [and] to avoid a miscarriage of justice." Syl. Pt. 7, in part, *State v. LaRock*, 196 W. Va. 294, 470 S.E.2d 613 (1996). Moreover, this Court has observed that "where there is a serious criminal conviction . . . it behooves the Court to conduct a plain error analysis on appeal, rather than dragging the proceedings out over many ensuing years." *State v. Lively*, 226 W. Va. 81, 93, 697 S.E.2d 117, 129 (2010). A previously undisclosed confession that surprises not only the defendant

---

[7] Petitioner's failure to raise plain error provides the majority no excuse for ignoring this serious issue, which was squarely briefed by the parties. This Court has repeatedly stated that "this Court's application of the plain error rule in a criminal prosecution is not dependent upon a defendant asking the Court to invoke the rule." *State v. Myers*, 204 W. Va. 449, 456, 513 S.E.2d 676, 683 (1998); *see also State v. Deel*, 237 W. Va. 600, 608, 788 S.E.2d 741, 749 (2016) ("Petitioner failed to object before the circuit court to any error concerning his constitutional rights . . . and failed to argue the issue on appeal. These failures, however, do not . . . preclude us from examining an issue under a plain error analysis.); *State v. Lively*, 226 W. Va. 81, 93, 697 S.E.2d 117, 129 (2010) ("Although the Defendant does not ask the Court to notice plain error, the Court can sua sponte apply the plain error doctrine if the record below is sufficient for such analysis."); *State v. Rash*, 226 W. Va. 35, 41, 697 S.E.2d 71, 77 (2010) ("Although assignment of error seven, the plain error rule, was likewise not raised in the Petition for Appeal, this Court has held that we may, in the interest of justice, consider this issue *sua sponte*.").

but also the prosecution, and most assuredly strikes right at the heart of a defendant's defense, would certainly appear to warrant this Court's consideration regardless of its ultimate determination.

The majority plays coy with the error presented, suggesting that because neither petitioner nor the trial court fully captured the ostensibly controlling authority—Rule 16—in the proceedings below, the error was not adequately preserved and therefore undeserving of review. However, the applicability of Rule 16 has been fleshed out and squarely presented to this Court; yet the majority declines an opportunity to aid in framing the issue and addressing it. Had it deigned to address the disclosure issue head-on, the only reasonable conclusion would be that petitioner was prejudiced in his defense and is entitled to a new trial.

It is well-understood that some of the most compelling evidence that can be introduced in a criminal trial is a confession—particularly to a known state actor such as a probation officer. Disclosure of statements of a defendant, whether full-blown confessions or not, are governed by Rule 16, requiring the State to produce written or recorded statements and "any other relevant *oral statement* made by the defendant whether before or after arrest in response to interrogation by any person then known by the defendant to be an agent of the state if the state intends to use that statement at trial." (Emphasis added). The protections afforded to a defendant through pretrial discovery and disclosures are fundamental:

10

> Discovery is one of the most important tools of a criminal defendant. The purpose of Rule 16(a), our basic discovery rule in criminal cases, is to protect a defendant's right to a fair trial. The degree to which that right suffers as a result of a discovery violation cannot be determined by simply asking would the nondisclosed information enhance or destroy the State's case. A significant inquiry is how would the timely access of that information have affected the success of a defendant's case.

*State ex rel. Rusen v. Hill*, 193 W. Va. 133, 139, 454 S.E.2d 427, 433 (1994).

The Court has made clear that "it is necessary in most criminal cases for the State to share its information with the defendant if a fair trial is to result." *Id*. at 139, 454 S.E.2d at 433. Accordingly, we have held that a petitioner is prejudiced by a Rule 16 discovery violation if "the non-disclosure surprise[d] the defendant on a material fact, and (2) . . . hamper[ed] the preparation and presentation of the defendant's case." 193 W. Va. at 133, 454 S.E.2d at 427, Syl. Pt. 2, in part. There can be little doubt of both factors in this case. Unquestionably, everyone involved was surprised by the probation officer's testimony. More importantly, this undisclosed confession struck a fatal blow to defendant's stated defense. In fact, the significance of this confession raises the consideration of whether a trial would have even ensued had petitioner been apprised that the State intended to use it in its case-in-chief. *See Id.* at 139, 454 S.E.2d at 433 ("[C]omplete and reasonable discovery is normally in the best interest of the public . . . [because] it may very well encourage plea negotiations."); *see also United States v. Lewis*, 511 F.2d 798, 802 (D.C. Cir. 1975) ("[A] principal purpose of discovery is to advise defense counsel what the defendant faces in standing trial; it permits a more accurate

11

evaluation of the factors to be weighed in considering a disposition of the charges without trial. While we cannot know whether such disclosure would in this case have led to disposition without trial, we do know that such disclosure does result in such dispositions in many cases.").

I recognize that this case presents an anomaly that plainly confounded the trial court—the fact that the State itself did not know about the alleged confession and did not elicit the probation officer's testimony in that regard. The State argues strenuously that because it did not "intend" to use the confession at trial (because it did not know about it), no Rule 16 violation occurred. By emphasizing that it committed no wrongdoing in failing to disclose the confession, the State improperly extrapolates that into a conclusion that there was no trial error that prejudiced petitioner. This Court considered and dispensed with these arguments decades ago.

This Court has made clear that "[a] police investigator's knowledge of evidence in a criminal case is imputed to the prosecutor" for purposes of disclosure of exculpatory evidence under *Brady v. Maryland*, 373 U.S. 83 (1963) and *State v. Hatfield*, 169 W.Va. 191, 286 S.E.2d 402 (1982). Syl. Pt. 1, in part, *State v. Youngblood*, 221 W. Va. 20, 650 S.E.2d 119 (2007). In *Youngblood*, the state failed to produce a note which provided impeachment evidence in response to a Rule 16 discovery request; during the investigation, a Trooper had directed a witness to throw it away. 221 W. Va. at 24, 650 S.E.2d at 12. The Court found that despite police investigators failing to advise the

prosecutor of the existence of the note, the non-disclosure was imputed to the State and warranted a new trial. *Id*. at 33-34, 650 S.E.2d at 132-33.

To the extent the State distinguishes this particular evidence from *Brady*-level disclosure obligations because it was *inculpatory* rather than *exculpatory*, the Court has likewise already considered this issue. In *State v. Hager*, 176 W. Va. 313, 316, 342 S.E.2d 281, 284-85 (1986), *overruled on other grounds by State v. Woodson*, 181 W. Va. 325, 382 S.E.2d 519 (1989), the Court ordered a new trial due to the introduction of an undisclosed statement during rebuttal which the prosecution only first learned of at trial. The Court explained,

> [T]his Court has consistently held that where a failure to make disclosure hampers the preparation and presentation of the defendant's case, such nondisclosure is fatal to the prosecution's case. *See*, syl. pt. 2, *State v. Grimm*, 165 W.Va. 547, 270 S.E.2d 173 (1980); syllabus, *State v. Ellis,* 176 W.Va. 316, 342 S.E.2d 285 (1986). Our holding in *Grimm* recognized that *adequate preparation by the defense is a prerequisite to a fair trial. We cannot allow a failure by the prosecution, albeit unintentional, to prejudice the defendant's right to a fair trial.* . . . In this case, the appellant was not advised of the evidence until the rebuttal stage of the trial. The evidence strongly rebutted Mr. Hager's self-defense argument, his key defense. It is quite probable that had defense counsel known of this statement, it would have tried the case differently.

*Id*. at 316, 342 S.E.2d at 284-85 (emphasis added); *see also State v. Miller*, 178 W. Va. 618, 626, 363 S.E.2d 504, 512 (1987) (finding error where undisclosed, incriminating oral statements were introduced yet trial court "utilized no sanctions to alleviate what was recognized as a prejudicial situation.").

13

Simply because the State did not deliberately solicit the testimony about the undisclosed confession does not make it any less of an unfair surprise to petitioner or any less prejudicial to his defense than it would be if the State knew about it and failed to disclose it under the Rule or a discovery order. As such, the disclosure is no less violative of the protections afforded by Rule 16. *See Smith v. United States*, 491 A.2d 1144, 1147 (D.C. 1985) (finding that "the integrity of the criminal process cannot be preserved" where defendant is not given "accurate[] and unambiguous[]" information in response to disclosure request). Had the majority undertaken an analysis of the Rule and a comprehensive review of the fairness and integrity of the proceedings, it undoubtedly would have concluded that petitioner succumbed to "trial by ambush"—whether that was the State's intention or not.

Preoccupied by the absence of perceived fault on the part of the prosecutor, the trial court focused on petitioner's own culpability in an effort to frame the issue, and it is here that the trial court most profoundly missed the mark. In denying the motion for a new trial, the trial court fixated on the fact that *petitioner* was surely the *only* one who knew about the confession and should have advised his counsel that he made it, thereby prompting counsel to "preemptively" move to suppress it. The court hypothetically weighed the competing interests of counsel in moving to suppress a confession revealed by his client and his duty of confidentiality. Petitioners' counsel aptly responded, "Why would we object to the voluntariness of the statement that we have no reason to believe is in evidence, Your Honor?" Nonetheless, the trial court found that petitioner was obligated

14

to tell his attorney about the alleged confession so that counsel could move to suppress or be prepared to counter it at trial, stating that "[a]ny error resulting from such recalcitrance is one of defendant's own making." However, this is a badly misguided view of our criminal procedural rules and caselaw. If one presumes that a defendant must surely "know" of all the evidence against him and, despite no indication from the State that it knows of it or intends to use it, he must take the initiative to preempt it and thereby incriminate himself, our entire system of pretrial discovery and disclosure is rendered meaningless. More importantly, placing this obligation on a defendant is plainly prohibited by the Fifth Amendment privilege against self-incrimination.

Further, this is an extraordinarily dangerous view that *presumes the confession occurred*. The trial court made this assumption despite the State's self-preserving insistence that it directly and repeatedly asked the probation officer what petitioner said about the accident and was told that he did not know or remember. Indeed, the idea that a government agent would suddenly remember on the stand that a defendant made an unequivocal confession, when he failed to recall it on four previous occasions when discussing his testimony is highly suspect. As such, the trial court's assignment of blame on petitioner is even more deeply flawed given the possibility that the confession never even occurred, thereby theoretically obliging a defendant to preemptively move to suppress a confession he never made.

Further, the trial court's focus on petitioner's subsequent admission to the "confession" for purposes of mitigating its effect sets a dangerous precedent: allowing a defendant to be "cornered" by inadmissible evidence in the hopes that he will concede to it in an attempt to save himself, and then using that concession to excuse the error. When surprised by the admission of the alleged confession and the trial court's refusal to declare a mistrial, petitioner and his counsel were faced with only two options which had to be determined instantaneously: admit to the confession, attempt to explain it, and incorporate it into his already-stated defense, or deny the confession. It is precisely the unfairness of this predicament that underscores the error: the trial court unfairly penalized petitioner for choosing the wrong defensive tactic—which he was required to choose at a moment's notice—and used it to rationalize that no error occurred in the first instance. The majority's refusal to address merely sanctions the trial court's badly skewed reasoning.

The majority's attempt at further demonstrating the harmlessness of this error is scarcely more persuasive. It points to two pieces of testimony as indicative of the "ample evidence" produced in support of petitioner's guilt, making the confession "harmless: 1) a "coded" phone call with his fiancée; and 2) testimony from an eyewitness about petitioner's appearance after the accident. However, the "coded" phone call is—at best— entirely consistent with petitioner's defense: that he consumed heroin at the accident scene. At no point in this "coded" phone call does he express with any clarity *when* he consumed it—ultimately the lone issue of consequence. Even less consequential is the testimony from the eyewitness, who testified that after having been involved in an auto accident

16

where his car was airborne and landed on its hood, petitioner was "disoriented" and unconcerned with a stranger's attempt to "take a look at him." To suggest that this testimony is of such compelling nature as to make the surprise introduction of a confession to a State agent "harmless" defies credulity.

The obligations and operation of Rule 16 where vital, undisclosed evidence is unintentionally introduced into evidence is a question worthy of this Court's analysis. More importantly, regardless of the answer to that question, it is plain that the State's use of an undisclosed and highly problematic confession resulted in a trial that was fundamentally unfair. It is the obligation of this Court to carefully consider issues of such fundamental importance. Accordingly, while I concur in the majority's analysis of the recidivist proceedings, I respectfully dissent to its refusal to address the central, troubling error presented in this appeal and would award petitioner a new trial on his triggering recidivist offense, vacating the resulting recidivist conviction.